**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO._____

UNITED STATES OF AMERICA,

    Petitioner,

v.

SUZETTE BONANNO; CHARLES
BONANNO; and SIMFA ROSE
PHARMACEUTICAL SPECIALTY, INC.
d/b/a SIMFAROSE PHARMACY.

    Respondents.
_____/

**PETITION OF THE UNITED STATES FOR SUMMARY ENFORCEMENT OF**
**CIVIL INVESTIGATIVE DEMAND 2021-SP-DMR/INT-01 AND SUPPORTING**
**MEMORANDUM OF LAW**

Pursuant to the False Claims Act, 31 U.S.C. § 3733(j) (the "FCA"), petitioner the United States (the "Government") respectfully petitions this Court for an Order directing Respondents Suzette Bonanno, Charles Bonanno, and Simfa Rose Pharmaceutical Specialty, Inc. d/b/a SimfaRose Pharmacy ("SimfaRose") (collectively, "Respondents") to comply with Civil Investigative Demand 2021-SP-DMR/INT-01 ("CID 2021-SP-DMR/INT-01" or "the CID"), which was issued to Respondents by the Government on March 24, 2021.[1]

As set forth below, Respondents have not petitioned to modify or set aside CID 2021-SP-DMR/INT-01; nonetheless, despite multiple attempts by the Government to secure Respondents' compliance with the CID for over ten months, Respondents have failed to produce documents or provide complete answers to most of the document demands and interrogatories in the CID.

---

[1] A copy of CID 2021-SP-DMR/INT-01 is attached as Exhibit A to the Declaration of Clarissa Pinheiro Schild in support of this petition for enforcement.

Respondents have not produced any emails or text messages, nor have they certified compliance with the CID. Instead, Respondents have dumped three boxes of hard-copy medical records, which are not Bates labeled and appear to include multiple duplicate copies, on the Government and produced less than 100 other documents, mostly without identifying the requests to which the documents are responsive. Moreover, Respondents have completely stopped responding to the Government and its attempts to secure compliance with the CID.

The CID is enforceable because Congress granted the United States Attorney General and his or her designees the authority to investigate violations of the FCA, the CID follows procedural requirements, and the CID seeks evidence that is relevant and material to the United States' investigation. The United States respectfully requests that this Court order Respondents to (1) provide complete responses to Interrogatories 1-6, 9-11, and complete responses to the revised version of Interrogatory 7; (2) produce, under a sworn certificate in the form specified in CID 2021-SP-DMR/INT-01, all non-privileged documents responsive to Document Requests 1, 2 and 4-12 in accordance with the CID Instructions for Production; and (3) produce a privilege log in accordance with CID Instructions for Production 8 and 9 to the extent any responsive documents are privileged. The specific information relevant to each of the foregoing items in the CID (including the verbatim request or interrogatory at issue, Respondents' verbatim response to same, and the status and reasons enforcement is required) is detailed in Exhibit C to the Declaration of Assistant U.S. Attorney Clarissa Pinheiro Schild. In further support of this Petition, the Government states the following:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this proceeding under 31 U.S.C. § 3733(j) and 28 U.S.C. § 1331.

2. Venue is proper under 31 U.S.C. § 3733(j).

## PARTIES

3. Petitioner is the United States. Through the Centers for Medicare and Medicaid Services ("CMS"), the United States provides funding for the Medicare prescription drug benefits program, which is commonly referred to as Medicare Part D.

4. Respondent Simfa Rose Pharmaceutical Specialty, Inc. d/b/a SimfaRose Pharmacy ("SimfaRose") is a Florida corporation and specialty retail pharmacy with its principal place of business in Pembroke Pines, Florida that transacts business in this District. As relevant here, SimfaRose bills Medicare Part D for prescription drugs.

5. Suzette Bonanno owns and operates SimfaRose, while her husband Charles Bonanno manages the pharmacy and is a pharmacist.

6. Simfa Rose Pharmaceutical Specialty, Inc. d/b/a SimfaRose Pharmacy is one pharmacy location owned and/or operated by Suzette and Charles Bonanno, who also own or owned affiliated pharmacies that conducted business under the name "SimfaRose" in New York (as Sea J Pharmacy Corp. d/b/a SimfaRose) and in Lake Worth, Florida (as KGJ Enterprises d/b/a SimfaRose).

## ISSUANCE AND SERVICE OF CID 2021-SP-DMR/INT-01

7. On March 24, 2021, CID 2021-SP-DMR/INT-01 was issued by United States Attorney for the Southern District of Florida Ariana Fajardo Orshan, a designee of the Attorney General under 31 U.S.C. § 3733, to Respondents pursuant to the FCA. Declaration of Clarissa Pinheiro Schild ("Decl."), Ex. A (the CID).

8. The CID was served on Respondents on March 26, 2021. *Id.*, Ex. B (proof of service).

9. The CID seeks from Respondents answers to eleven (11) interrogatories and documents responsive to twelve (12) document requests. *Id.*, Ex. A.

10. The CID Instructions for Production state that the CID seeks documents for the Relevant Time Period of January 1, 2015, through the date of compliance with the CID. *Id.*

11. As stated in the CID, the Government is seeking such information and documents from Respondents to investigate whether they "submitted or caused to be submitted false claims to government healthcare programs [such as Medicare and Medicaid] for prescription drugs, including but not limited to controlled substances," and "[p]rimary areas of inquiry include but are not limited to medical histories of patients who obtained prescriptions from [SimfaRose], relationships with manufacturers and physicians, steps taken to monitor and prevent potential abuse of prescription opioids, and [the] pharmacy's prescribing/dispensing practices." *Id.*

12. As part of this investigation, the Government issued CID 2021-SP-DMR/INT-01 to Respondents because the Government has reason to believe that Respondents are in possession, custody, or control of documents and information relevant to this investigation.

13. More specifically, each of the document demands and interrogatories in the CID is related to potential violations of the False Claims Act, and seeks documents or information that would show, for example, whether Respondents billed Medicare or other federal programs for medications they did not dispense or more medications than they actually purchased; whether Respondents entered into agreements with physicians or distributors that resulted in false claims; what Respondents communicated to specific physicians about certain prescription drugs; whether Respondents billed federal programs for prescriptions that were not medically necessary; and whether Respondents dispensed improper prescriptions, including high-dose opioids and cocktails, to patients who presented with red flags.

14. The information and documents sought by CID 2021-SP-DMR/INT-01 are reasonably relevant to the Government's investigation under the FCA inquiry; and the CID is neither indefinite nor unduly burdensome.

### **RESPONDENTS' FAILURE TO COMPLY WITH THE CID**

15. The United States granted several extensions of time to Respondents, from the original return date of April 25, 2021, until a final extension to January 10, 2022. Decl. ¶¶ 6, 19.

16. Respondents did not petition to modify or set aside the CID.

17. Under the FCA, 31 U.S.C. § 3733(j)(2)(A)(i), the deadline for Respondents to petition to modify or set aside the CID was no later than April 15, 2021.

18. Between March and December 2021, the Government repeatedly attempted to reach an agreement with Respondents, both via phone and email, as to the scope, prioritization, and timing of the document production, clarify the status of Respondents' compliance with the CID, identify which documents had already been produced, address Respondents' objections, and secure complete responses. Decl. ¶ 17. However, Respondents have refused to confer in good faith and have failed to comply with the CID.

19. Between May and November 2021, Respondents produced documents on a rolling basis, though the documents produced did not comply with the CID Instructions for Production and Data Production Specifications, which asked for documents to be produced in electronic format, to be Bates stamped, and for all documents to be organized or identified by document request number, among other instructions. Decl. ¶ 11. The failure to comply with the CID instructions made it difficult and time consuming for the Government to evaluate Respondents' compliance with the CID.

20. The vast majority of documents produced by Respondents to date in response to CID 2021-SP-DMR/INT-01 are patient records responsive to Document Request 2. Decl. ¶ 12.

These patient records were submitted in several batches in both paper and electronic format and without Bates numbers. *Id.*

21. For Document Request 2, patient records for the same patient were at times produced in separate batches, and it is unclear if those contain duplicates. Decl. ¶ 13. The paper records contain duplicate copies, and sometimes triplicate copies. *Id.* As a result, the document production gives a false impression that many more records have been produced than have actually been produced.

22. Many of the patient records responsive to Request 2 are illegible screenshots. Decl. ¶ 14.

23. The Government has not found any records for four (4) of the patients whose records were requested in Document Request 2. Decl. ¶ 13.

24. As part of negotiations with Respondents, the Government agreed to accommodate Respondents by not seeking responses to Document Request 3. Decl. ¶ 24.

25. For all other document requests in the CID besides Requests 2 and 3, Respondents have produced a minimal number of total documents – approximately 71 – all in electronic format (either PDF, Excel, or Word). Decl. ¶¶ 9, 10, 15.

26. From a review of the documents produced, substantial documents remain outstanding, including but not limited to entire categories of document types such as email correspondence, text messages, and drug purchase records. Decl. ¶ 17. Respondents have not certified compliance with any of the CID requests. Decl. ¶ 24.

27. As for the interrogatories, although Respondents provided responses to CID Interrogatories 1 through 11 on July 12, 2021 (Decl., Ex. D), all but the response to Interrogatory 8 are incomplete (*see* Decl., Summary Chart, Ex. C). For example, Interrogatory 7 asks for "the name, address, telephone numbers, and point of contact for all wholesalers, manufacturers, or

suppliers from whom You purchased products dispensed at SimfaRose" and requests a list of the products purchased. Decl., Ex. A. The Government agreed to accommodate Respondents by revising Interrogatory 7 not to require a list of products purchased, and to request information only for "prescription drug products" rather than "all products dispensed." Decl. ¶ 16, Ex. C, H. Nevertheless, even after the revision, Respondents failed to provide addresses, telephone numbers, or points of contact for the wholesalers; failed to confirm that a complete list of wholesalers was provided; and in some cases, only provided an acronym for the wholesaler rather than the full name. *Id.*

28. On December 8, 2021, after multiple unsuccessful efforts to resolve pending issues with Respondents without court intervention, the Government emailed Respondents and set a final deadline of January 10, 2022, to respond to the CID. The United States also informed Respondents that the next step would be to file a petition to enforce the CID in federal court. Decl. ¶ 19.

29. A phone call was scheduled for January 7, 2022, but Respondents' counsel did not dial into the call at the scheduled time. Decl. ¶ 21.

30. Despite the United States' efforts to secure Respondents' compliance with the CID for over ten months, Respondents still have not produced outstanding documents or fully answered the interrogatories indicated herein. They have given no indication as to whether they have fully complied with any of the document requests in the CID. They have also refused to commit to a deadline by when they would fully respond. Decl. ¶ 22.

31. Respondents have also failed to produce a privilege log in accordance with the CID Instructions for Production, numbers 8 and 9. *Id.*

32. Summary enforcement of CID 2021-SP-DMR/INT-01 is therefore appropriate, and the United States respectfully requests that this Court order Respondents to:

    A. provide complete responses to Interrogatories 1-6, 9-11, and complete responses to Interrogatory 7 as revised by the Government in its July 2, 2021 email to Respondents;

    B. produce, under a sworn certificate in the form specified in CID 2021-SP-DMR/INT-01, all non-privileged documents responsive to Document Requests 1, 2 and 4-12 in accordance with the CID Instructions for Production;

    C. produce a privilege log in accordance with CID Instructions for Production 8 and 9 to the extent any responsive documents are privileged.

<b>MEMORANDUM OF LAW</b>

**1.**      **The Government's Power to Issue a CID**

The FCA is the government's primary tool to recover losses resulting from fraud. *Avco Corp. v. U.S. Dep't of Justice*, 884 F.2d 621, 622 (D.C. Cir. 1989). The FCA imposes statutory damages and civil penalties for knowingly submitting, or causing to be submitted, false or fraudulent claims for payment or approval to the government. 31 U.S.C. § 3729(a)(1)(A). The Department of Justice (DOJ) is responsible for investigating violations of the FCA. 31 U.S.C. § 3730(a).

Section 3733 of the FCA empowers the Attorney General or a designee[2] "to issue a CID upon any person or entity who may be in possession, custody, or control of information "relevant to a false claims act investigation." 31 U.S.C. § 3733(a)(1). The recipient must then produce that information in the form of documents, answers to written interrogatories, or oral testimony. *Id*. The FCA empowers the United States to issue a CID "before commencing a civil proceeding under [FCA] section 3730(a) or other false claims law, or making an election under [FCA] section

---

[2] The Attorney General delegated the authority to issue CIDs to the United States Attorneys as explained in U.S. Department of Justice Civil Division Directive 1-10, Section 5 and Memorandum by Assistant Attorney General Tony West, March 8, 2010.

3730(b)." *Id.* By enacting the statutory authority for CIDs under the FCA, Congress sought to enable the United States "to determine whether enough evidence exist[s] to warrant the expense of filing [a civil] suit, as well as to prevent the potential Defendant from being dragged into court unnecessarily." *United States v. Witmer*, 835 F. Supp. 208, 211 (M.D. Pa. 1993) (quoting H.R. Rep. 660, 99th Cong., 2d Sess. 26 (1986)).

As the United States Supreme Court has explained, an administrative agency, such as the DOJ, has broad investigatory powers and "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not. When investigative and accusatory duties are delegated by statute to an administrative body, it, too, may take steps to inform itself as to whether there is probable violation of the law." *United States v. Morton Salt Co.*, 338 U.S. 632, 642–43 (1950). The Eleventh Circuit has similarly recognized "the broad investigatory power of administrative subpoenas." *United States v. Fla. Azalea Specialists*, 19 F.3d 620, 622 (11th Cir. 1994) (quoting *Morton Salt*, 338 U.S. at 642-43); *see also In re Oral Testimony of a Witness Subpoenaed Pursuant to Civil Investigative Demand No. 98-19*, 1 F. Supp. 2d 587, 589 (E.D. Va.), *aff'd,* 182 F.R.D. 196 (E.D. Va. 1998) ("The issuance of a CID is a unique procedure almost, but not quite, akin to a grand jury investigation.").

An FCA CID is a type of administrative subpoena that allows the DOJ "to investigate whether there is a basis for remedying a false claim made against the United States." *United States v. Markwood*, 48 F.3d 969, 976 (6th Cir. 1995). "Although Congress has chosen to call this subpoena by another name, a false claims CID is, at its essence, a subpoena issued by an administrative agency." *Id.* Agencies are afforded great latitude in gathering information by administrative subpoena, an allowance stemming from the government's unique, national role in policing federal-law violations. Particularly at the outset, investigators must cast a large net: "[A]

9

wide range of investigation is necessary and appropriate where . . . multifaceted activities are involved, and the precise character of possible violations cannot be known in advance." *F.T.C. v. Texaco, Inc.*, 555 F.2d 862, 877 (D.C. Cir. 1977).

2. **Standard for CID Enforcement Under the FCA**

Under Eleventh Circuit law, "[t]he measure of relevance used in subpoena enforcement actions is quite broad," and the district court should enforce an administrative subpoena if the information sought is "reasonably relevant" to the investigation. *Fla. Azalea Specialists*, 19 F.3d at 624. As the *Markwood* court observed, the Supreme Court has said that administrative subpoenas should be enforced when "the evidence sought by the subpoena was not plainly incompetent or irrelevant to any lawful purpose of the [agency] in the discharge of [its] duties." *Markwood*, 48 F.3d at 977 (citation omitted); *see also*, *EEOC v. Kloster Cruise Ltd.*, 939 F.2d 920, 922 (11th Cir. 1991).

In a proceeding to enforce an administrative subpoena, the role of a district court is "sharply limited" to "whether the evidence sought is material and relevant to a lawful purpose of the agency." *Kloster Cruise Ltd.*, 939 F.2d at 922; *see also, e.g.*, *E.E.O.C. v. Elrod*, 674 F.2d 601, 613 (7th Cir. 1982) ("An administrative subpoena will be enforced, when challenged on the basis of relevancy, if the material subpoenaed touches a matter under investigation."); *Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*, 878 F.2d 875, 882 (5th Cir. 1989) ("For purposes of an administrative subpoena, the notion of relevancy is a broad one."). In the CID context, "[r]elevancy is determined in terms of the investigation rather than in terms of evidentiary relevance" and "[t]he relevancy requirement is 'not especially constraining'" *United States v. ASG Solutions Corp.*, No. 17CV1224 L, 2018 WL 1418023, at *5 (S.D. Cal. Mar. 22, 2018) (citations omitted). A district court will "defer to the agency's appraisal of relevancy, which must be

accepted so long as it is not obviously wrong." *Resolution Tr. Corp. v. Walde*, 18 F.3d 943, 946 (D.C. Cir. 1994) (quotations omitted) (citation omitted).

Courts cast a deferential eye toward agency subpoenas. In a proceeding to enforce an administrative subpoena, the court may inquire only as to whether (1) the administrative investigation is within the agency's authority, (2) the agency's demand is too indefinite, and (3) the information sought is reasonably relevant. *United States Equal Employment Opportunity Comm'n v. KB Staffing, LLC*, No. 8:14-MC-41-T-30AEP, 2014 WL 12628619, at *2 (M.D. Fla. Aug. 28, 2014) (citing *U.S. E.E.O.C. v. Tire Kingdom, Inc.*, 80 F.3d 449, 450 (11th Cir. 1996)); *see also Fla. Azalea Specialists*, 19 F.3d at 623 (quoting *Federal Election Commission v. Florida for Kennedy Committee*, 681 F.2d 1281, 1284 (11th Cir. 1982)); *Morton Salt Co.*, 338 U.S. at 652. Generally, unless the subpoena was issued for some improper purpose that would abuse the court's process—such as harassment or bad faith—it should be enforced. *See United States v. Powell*, 379 U.S. 48, 58 (1964); *Markwood*, 48 F.3d at 978 (citing *United States v. LaSalle Nat'l Bank*, 437 U.S. 298 (1978)). The challenger bears a "heavy burden" of demonstrating such impropriety. *Markwood*, 48 F.3d at 978 (citation omitted). For enforcement of a CID, the DOJ must also show that it has complied with the procedural requirements for issuance set forth in the authorizing statute. *See Witmer*, 835 F. Supp. at 221.

3.   **The CID Should Be Enforced**

As described above, the CID was properly issued within the DOJ's authority, delegated to the U.S. Attorney's Office. The CID was issued in furtherance of an FCA investigation of SimfaRose Pharmacy and related entities, which bill Medicare for prescription drugs. The United States has a legitimate interest in investigating potential fraud, particularly when the fraudulent conduct touches on the safety and well-being of patients taking prescription medications covered

by federal prescription drug benefits. Nor is the CID "too indefinite." It covers the time period of January 1, 2015 through the date of compliance with the demand, a limited timeframe being extended only by Respondents' failure to respond timely. The information requested in the CID is also specific and relevant to the investigation. *See Fla. Azalea Specialists*, 19 F.3d at 624 (finding an administrative subpoena was not "too indefinite" on that basis). The documents and information requested are also "reasonably relevant" to the DOJ's investigation, a standard that is highly deferential to the Government.

Here, the United States is investigating whether Respondents submitted, or caused to be submitted, false claims to government healthcare programs for prescription drugs, including but not limited to controlled substances. Key areas of inquiry in the CID include, for example, Respondents' drug dispensing practices (Requests 2, 6, 7, 11; Interrogatories 2, 10); drug purchases from wholesalers and documents reflecting pharmacy inventory (Request 12, Interrogatory 7); the pharmacy's relationships with drug distributors/wholesalers and health care providers (Requests 4, 5, 7; Interrogatory 7, 9); prior audits and investigations involving the pharmacy (Request 8; Interrogatories 8, 11); and information identifying current and former employees of the pharmacy, who may have knowledge about Respondents' claims to federal healthcare payers for prescription drugs (Interrogatory 4).

The document demands and interrogatories are all relevant to whether Respondents billed Medicare or other federal programs for medications they did not dispense or for more medications than they actually purchased; whether Respondents entered into agreements with physicians or distributors that resulted in false claims; what Respondents communicated to specific physicians about certain prescription drugs; whether Respondents billed federal programs for prescriptions

that were not medically necessary; and whether Respondents dispensed improper prescriptions, including high-dose opioids and cocktails, to patients who presented with red flags.

Respondents allege that the Government's requests are unduly burdensome. However, even where an administrative subpoena is broad in scope, "[s]ome burden on subpoenaed parties is to be expected and is necessary in furtherance of the agency's legitimate inquiry and the public interest." *Texaco*, 555 F.2d at 882. "The burden of showing that the request is unreasonable is on the subpoenaed party." *Id.* In this case, by participating in federal insurance programs, and registering with the Drug Enforcement Administration to dispense controlled substances, Respondents have agreed to make certain documents readily available upon request by the Government.[3] Since many of the documents requested in the CID should be segregated, maintained, and available as part of Respondents' normal business practices, much of the burden should be alleviated. Moreover, the Government offered to assist Respondents in several ways – by revising the CID, by agreeing to prioritize certain requests over others and allowing Respondents to produce documents on a rolling basis, and by offering to send Government representatives onsite to Respondents' business to help retrieve copies of documents. Decl. ¶¶ 16, 18, 24, Ex. C. Respondents did not accept the Government's offer of in-person assistance and did not adhere to any of the Government's attempts to set a schedule for document production. Enforcement of the CID is therefore necessary and appropriate.

---

[3] For example, records maintenance requirements are set forth in a participating pharmacy's agreements with Pharmacy Benefit Managers, which administer federal prescription drug benefit programs. *See also*, *e.g.*, 21 C.F.R. § 1304.04(h) (requiring DEA-registered pharmacies to maintain inventories and records of controlled substances, including that certain records must be "readily retrievable from ordinary business records of the pharmacy").

**4.      Respondents' Objections Relating to the New Jersey FCA Investigation Lack Merit**

In response to Documents Requests 4, 5, 7, and 11, and Interrogatory 9, Respondents object that they should not be required to produce information to the U.S. Attorney's Office for the Southern District of Florida (SDFL) because of a prior FCA investigation by the District of New Jersey. Respondents argue both that (1) CID 2021-SP-DMR/INT-01 is not enforceable because the Government allegedly already intervened in a *qui tam* matter filed in the District of New Jersey that named Respondents as defendants[4], and (2) Respondents should not have to produce documents already produced to the New Jersey office. *See* Summary Chart, Ex. C. Both arguments lack merit.

First, under 31 U.S.C. § 3733(a)(1), a CID may be issued "before commencing a civil proceeding under section 3730(a) or other false claims law, or making an election under section 3730(b)." Respondents argue that because the United States elected to intervene in the New Jersey *qui tam* action, the United States lacks authority to issue CID 2021-SP-DMR/INT-01 in the SDFL. However, *U.S. ex rel. Jane Doe v. Prostrakan, Inc. et al.*, No. 14-5865, was a completely separate matter that has already been resolved. The United States settled the matter with respect to one defendant and dismissed the matter without prejudice to the United States with respect to the other defendants, including SimfaRose Pharmacy and Charles Bonanno. *See* No. 14-5865, D.E. 13 (United States' Notice of Election to Intervene in Part for Settlement Purposes Against Galena Biopharma, Inc.) and D.E. 19 (Stipulation of Dismissal). Nothing in the FCA prohibits the United States from pursuing a separate investigation involving the same defendant if evidence of potential fraud arises. An election made in one matter does not prohibit the United States from pursuing

---

[4] The New Jersey *qui tam* matter has already been unsealed.

other matters. Section 3733(a)(1) merely clarifies that the CID is an investigatory tool that should be used before the United States becomes involved in a lawsuit against the defendants in a particular matter. Thus, CID 2021-SP-DMR/INT-01 is valid and 31 U.S.C. § 3733(a)(1) poses no bar on its issuance here.

Moreover, even if the language at issue in 31 U.S.C. § 3733(a)(1) applied to a situation involving separate investigations in separate districts, Respondents are incorrect about the timing of CID 2021-SP-DMR/INT-01 in relation to the New Jersey *qui tam*. CID 2021-SP-DMR/INT-01 was served March 26, 2021, and the United States declined intervention with respect to defendants SimfaRose Pharmacy and Charles Bonanno in the New Jersey *qui tam* on July 12, 2021, significantly *after* CID 2021-SP-DMR/INT-01 was served on Respondents. Thus, even if the language in 31 U.S.C. § 3733(a)(1) applied here, which it does not, the CID would be valid because it was issued "before commencing a civil proceeding . . . or making an election" in an FCA case with respect to the Defendants/Respondents involved. Respondents are therefore required to respond to the CID.

Respondents also allege that they should not be required to reproduce documents and information already given to the District of New Jersey. However, as further detailed in Exhibit C, Respondents refused to provide the Government with clarifying information as to which documents provided to New Jersey would be responsive to each CID request. Respondents similarly "dumped" documents on the District of New Jersey without proper labeling and organization, making it impossible for the Government to accurately determine which documents would be responsive to which request. Respondents also refused to state whether they kept copies of the documents given to New Jersey. The documents provided to New Jersey also involve an earlier timeframe and a much narrower scope (only one specific drug). Still, the SDFL obtained

copies directly from the District from New Jersey, even though it was not required to do so, in an effort to see if some documents may not need to be reproduced. However, it was not possible for the Government to make sense of the documents produced to New Jersey and match the documents to the requests in CID 2021-SP-DMR/INT-01. *See* Summary Chart, Ex. C. Respondents should be required to provide the responsive, non-privileged documents to the SDFL.

5. **Respondents Failed to Timely Challenge the CID, Waiving Any Objection to Compliance**

The False Claims Act requires that a person looking to modify or set aside a CID must file a petition to do so "within 20 days after the date of service" or within a longer period set forth in the demand. 31 U.S.C. § 3733(j)(2). Respondents accepted service of the CID on March 26, 2021. They never filed a petition to modify or set aside the demand. Respondents have therefore waived their objection to any request in the CID.

It has been over ten months since Respondents received service of the CID. Respondents' refusal to respond undermines the United States' "legitimate right" to ascertain whether their behavior "is consistent with the law." *Morton Salt*, 338 U.S. at 652. The United States has an "important governmental interest in the expeditious investigation of possible unlawful activity," *Markwood,* 48 F.3d at 979, and Respondents are not entitled to delay the United States' investigation by refusing to comply with a valid CID. They should be ordered to comply.

## CONCLUSION

For the above reasons, the United States respectfully requests that the Court grant its petition and order Respondents to comply with CID 2021-SP-DMR/INT-01 on or before the deadlines proposed by the United States or such other deadlines set by the Court. A proposed order consistent with the relief requested is attached.

## CERTIFICATE OF CONFERRAL UNDER LOCAL RULE 7.1(a)(3)

On December 8, 2021, the United States emailed Respondents' counsel informing them that the next step would be to file a petition to enforce the CID. Respondents, through counsel, have indicated that the petition is opposed.

Dated: February 9, 2022

Respectfully submitted,

**JUAN ANTONIO GONZALEZ**
**United States Attorney**

*Clarissa Pinheiro Schild*
**Clarissa Pinheiro Schild**
**Assistant United States Attorney**
Fla. Bar No.: 0056784
United States Attorney's Office
99 N.E. 4th Street, 3rd Floor
Miami, Florida 33132
Tel.: 305.961.9310
E-mail: clarissa.schild@usdoj.gov
*Counsel for the United States*