# EXHIBIT A



# UNITED STATES OF AMERICA

United States Department of Justice
Southern District of Florida
CIVIL INVESTIGATIVE DEMAND
Documentary Material

| | |
|---|---|
| To: Suzette Bonanno<br>Charles Bonanno<br>Simfa Rose Pharmaceutical Specialty, Inc.<br>d/b/a SimfaRose Pharmacy<br>10016 Pines Blvd.<br>Hollywood, FL  33024 | CID No.:  2021-SP-DMR/INT-01 |

This Civil Investigative Demand is issued pursuant to the False Claims Act, 31 U.S.C. §§ 3729–3733, in the course of a False Claims Act investigation to determine whether there is or has been a violation of 31 U.S.C. § 3729. The False Claims Act investigation concerns whether Simfa Rose Pharmaceutical Specialty, Inc. d/b/a SimfaRose Pharmacy (SimfaRose), Suzette Bonnano, and/or Charles Bonnano submitted or caused to be submitted false claims to government healthcare programs for prescription drugs, including but not limited to controlled substances. Primary areas of inquiry include but are not limited to medical histories of patients who obtained prescriptions from You, relationships with manufacturers and physicians, steps taken to monitor and prevent potential abuse of prescription opioids, and Your pharmacy's prescribing/dispensing practices.

This Demand requires you to provide Documentary Material described in the attached Documentary Material Request in accordance with the attached Instructions and Definitions to the Federal Government. This is the original of the Demand; no copies have been served on other parties. The information and documents provided in response to this Demand may be shared, used, and disclosed as provided by 31 U.S.C. § 3733.

You must make this material available to AUSA Clarissa Schild, who has been designated as a False Claims Act custodian in this case. AUSA Schild may be contacted at 305.961.9310, if you have any questions.

These documents shall be produced no later than thirty (30) days from the receipt of this Demand, at the Office of the United States Attorney, 99 N.E. 4th Street, Third Floor, Miami, Florida  33132, or at another location to be mutually agreed upon by yourself and the False Claims Act custodian. The production of documentary material in response to this Demand must be made under a sworn certificate in the form printed in this Demand.

IN TESTIMONY WHEREOF

The undersigned official of the U.S. DEPARTMENT OF JUSTICE has hereunto set his hand.

_____
Ariana Fajardo Orshan, United States Attorney
Issued under the authority of 31 U.S.C. § 3733

| | |
|---|---|
| Failure to comply with the requirements of this Demand will render you liable to proceedings in U.S. district court to enforce the Demand and to punish default or disobedience. | NAME, ADDRESS AND PHONE NUMBER OF ASSISTANT U.S. ATTORNEY<br>**CLARISSA PINHEIRO SCHILD**<br>**Assistant United States Attorney**<br>**99 N.E. 4th Street, Third Floor**<br>**Miami, Florida  33132** |

| | 305.961.9310 |
|---|---|

## PROOF OF SERVICE

CID NO. **2021-SP-DMR/INT-01**    USAO NO. 2020V01590

| SERVED (DATE) | PLACE OF SERVICE |
|---|---|
| | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE (PERSONAL DELIVERY OR CERTIFIED/REGISTERED MAIL) |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I, an employee of the United States working under the direction and supervision of the Assistant United States Attorney identified on the face of this document in connection with a False Claims law investigation, certify that I served an executed copy of the civil investigative demand listed above. I declare under penalty of perjury under the laws of the United States of America that the forgoing information contained in this Proof of Service is true and correct.

Executed on  _____        _____
                 DATE        SIGNATURE OF SERVER

                                                  _____
                                                  ADDRESS OF SERVER

**CID No.: 2021-SP-DMR/INT-01**
**Instructions For Production**

1. Unless otherwise specified in the requests for documentary material that follow, this civil investigative demand ("demand") refers to documents that were received or dated at any time during the period of January 1, 2015 through the date of compliance with this Demand.

2. These requests apply to all documentary material in your possession, custody, or control regardless of their location and regardless of whether such documents are held by your attorneys, consultants, accountants, investigators, representatives or agents, or any other person acting on your behalf. If no documents exist that are responsive to a particular request, please provide a statement to that effect.

3. Identify all responsive documents that have been lost, discarded, or destroyed. In so doing, state the type of document, its date, the approximate date it was lost, discarded, or destroyed, the identity of each person having knowledge of the contents thereof, and identify all existing indices, lists, or documents that reflect the transfer or destruction of, or references to, such documents.

4. These requests are continuing in nature. If you become aware of or acquire possession, custody, or control of additional responsive documents, you shall promptly produce such additional documents for inspection and copying.

5. All documents produced in response to this demand shall comply with the following:
   a. You shall conduct a search for responsive documents in a manner sufficient to identify the source and location where each responsive document is found.
   b. All documents produced in response to this demand shall be segregated and labeled to show the document request to which the documents are responsive and the source and location where the document was found.
   c. To the extent that documents are found in file folders, computer disks, hard drives, or other storage media that have labels or other identifying information, the documents shall be produced with such file folder and label information intact.
   d. To the extent that documents are found attached to other documents, by means of paper clips, staples, or other means, such documents shall be produced together in their condition when found.

6. **See below for Specifications for Production of ESI and Digitized ("Scanned") Images ("Production Specifications").**

7. To facilitate the handling and return of the responsive documents, please mark each page with an identifying logo or your name (for example, "SimfaRose"), and number each page sequentially beginning with "000001." The marks should be placed in the lower right hand corner of each page, but should not obscure any information on the document.

8. If any documents are withheld based upon a claim of privilege, work product doctrine, or any other protection from discovery:
   a. Identify the document in writing and describe its contents, its author(s), all actual and intended recipients, and its date;
   b. State the privilege(s), work product doctrine(s), or other protection(s) from discovery relied upon for withholding the document; and
   c. State all facts supporting the claim of privilege(s), work product doctrine(s), or other protection(s) from discovery.

9. When a requested document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible. If a privilege is asserted with regard to a part of the material contained in a document, the party claiming the privilege must clearly indicate the portions as to which the privilege is claimed. When a document is redacted or altered in any fashion, identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the person performing the redaction or alteration. Any redaction must be clearly visible on the redacted document.

10. For each Interrogatory and subpart thereof, you must respond separately and in writing. Your responses must identify all documents that you used, referenced, or relied upon in your written responses.

# DATA PRODUCTION SPECIFICATIONS

**United States Attorney's Office**
**Southern District of Florida**



1. All documents provided in response to this subpoena/demand are to include all copies that differ in any respect, all marking and post-it notes and other similar documents attached thereto, as well as attachments referred to or incorporated by the documents.
2. Emails and word processing documents that are 8.5"x 11" should be provided as follows:
   a. In Bates-stamped TIFF Group IV files (BW) or Single page JPG (color) with an associated LFP file and a data load file (.DAT). The resolution should be 300 dpi. Any such documents containing hidden text should be converted to TIFF format in such a way that the hidden text is displayed prior to conversion.
   b. The data load file (.dat) file should include the extracted text, metadata (see Attachment A), Bates number information and links among document families for each file/document inclusive in the .lfp and .dat files. The .dat should include standard concordance delimiters. The Fields for Native Link and Extracted Text should include the path to the appropriate native file.
   c. All text should be extracted from the native file before it is imaged, and included in the text files that are linked with the image File.
   d. All metadata should be extracted from the native file before it is imaged, and included in the load files that are linked with the image file.
   e. Any native files which are not converted to images for technical or production reasons should have a Bates-stamped placeholder TIFF created and used in lieu of conversion, with the data including path information intending to link to the native version of the file.
3. Excel, Access, Casemap, and Powerpoint files, as well as documents that are larger than 8.5" x 11" should be provided as follows:
   a. In their native file formats, with all metadata, formulas, and other calculating information intact.
   b. With a bates stamped TIFF Group IV format PLACEHOLDER IMAGE for each spreadsheet and with an associated LFP file.
   c. The data load file (.dat) should include the extracted text and metadata (see Attachment A). It should also include a path link to the appropriate native file.
4. All paper documents should be:
   a. Scanned and provided single page, bates stamped TIFF Group IV format, with OCR text files and LFP files showing the document boundaries and attachment range boundaries. The resolution should be 300 dpi.
5. For ESI in a database that does not utilize Excel, Access or Casemap:
   a. provide a data dictionary for the system showing the tables, the fields within the tables and the relationship between the various fields and tables.
   b. provide a complete description of each table, as well as each field within each table.
   c. We will let you know what data or reports we will need based on the above information.
6. All links between documents within a document family should be preserved so that subsequent sorting and filtering will not separate them.
7. If any native files are redacted, the following steps should be taken:
   a. all unredacted native files should be preserved;
   b. the metadata originally associated with the unredacted native file should be produced; and
   c. all redacted information should be removed from the extracted text.
8. Data should be provided on CD, DVD, flash drive or an external hard drive and each respective production should be given a volume name.
9. A technical letter of transmittal should accompany the production of electronic data. This letter should

**DATA PRODUCTION SPECIFICATIONS**

**United States Attorney's Office**
**Southern District of Florida**



include the following: volume name, electronic bates range, document id or control numbering ranges referenced to custodian names, total number of records, total number of images/pages or files, mapping of fields to plainly identify field names, types, lengths, formats and also indicating the field name intended to be linked to for image viewing, date and time format, identification of time zone applied to ESI processing and confirmation that the number of files in load files match the number of files produced. Additionally, the subpoena/demand date and provisions therein for which the produced data is responsive shall be identified by the electronic Bates, document id or control numbering ranges of the files responsive to each provision.

10. All files should be globally de-duplicated with the following conditions:
    a. The "Unified Custodian" metadata field (listing all of the custodians who had the document before de-duplication) must be provided with the document production.
    b. The "Unified Filepath" metadata field (listing all of the file locations of the document before de-duplication) must be provided with the document production.
    c. For every production after the first, a separate Unified Custodian overlay shall be provided. If no overlay is necessary due to the fact that no documents de-duped out in connection with previously produced documents, this shall be expressly stated in the cover letter accompanying the subsequent production(s).
    d. All files and metadata for the duplicate documents removed during de-deduplication must be preserved and available for production upon request.
    e. No customization of hashing may occur without prior express approval by the Government
    f. De-duplication must be done by document family, not by individual document.
11. No coding propagation may occur without the express approval of the Government.
12. When extracting text, all text—including text contained in hidden fields—must be extracted.
13. Search syntax should be discussed with the Government prior to production. Utilization of search syntax does not modify Respondent's obligation to produce all non-privileged responsive documents. If you wish to utilize search syntax, please provide the following in a sortable spreadsheet:
    a. a description of the ESI universe that you'd like to search;
    b. the size of the ESI universe that you wish to search (number of files and number of families);
    c. a word dictionary sortable by custodian;
    d. a domain name list for all ESI in the universe;
    e. the text of commonly used headers and footers;
    f. a list of noise words; and
    g. the software platform you plan to use.
    h. Additionally, please process the data so that the following data can be obtained:
        (i) the number of documents retrieved as a result of a search term/custodian (or series of search terms/custodians);
        (ii) the number of document families retrieved as a result of a search term/custodian (or series of search terms/custodians); and
        (iii) the number of documents/document families retrieved if the search is only conducted in the email text.
14. Please comply with the attached Field Map.
15. Each page of each image file should be labeled with a Bates-number using the following convention: xxPREFIXyyyyyyyy, with the xx indicating the number/batch of the production, and the yyyyyyy indicating the sequential page number from the first page produced in the first production, and continuing from the final page of one production to the first page of the next production. Below are samples using this convention: 01PREFIX00000001.

# DATA PRODUCTION SPECIFICATIONS

**United States Attorney's Office**
**Southern District of Florida**



## ATTACHMENT A

| Field | Details |
|---|---|
| **APPNAME** | *Value Example*: Adobe Acrobat<br>*Description*: The application identified with the document |
| **ATTACHMENTS** | *Value Example*: 152714.xls; 152686.xls; 152682.xls; 152697.xls; 152670.xls<br>*Description*: Names of files attached to document. |
| **BCC** | *Value Example*: James Masters <jmasters@company.com><br>*Description*: Complete list of all names and emails of all individuals in the email's "BCC" field. |
| **BEGDOC** | *Value Example*: 01ABC000001<br>*Description*: The beginning bates number for a document. This represents the first page of any given document.<br>*Notes*: This is the control number (primary key) field for the entire database. |
| **CREATEDATE** | *Value Example*: 01/25/2008<br>*Description*: The application recorded date the file was generated. Please use the MM/DD/YYYY format. |
| **CUSTODIAN** | *Value Example*: John Smith<br>*Description*: The custodian of the document as provided to processing team prior to processing.<br>*Notes*: In the event of de-duplication, include the custodians for all documents removed during the de-duplication process in this field. |
| **DOCEXT** | *Value Example*: .doc<br>*Description*: The extension of the file. |
| **DOCTYPE** | *Value Example*: Microsoft Excel<br>*Description*: An identifier labeling what type of document as recorded in the header of the file. Identified by processing software. |
| **ENDDOC** | *Value Example*: 01ABC000002<br>*Description*: The ending bates number for a document. This represents the last page of any given document. |
| **FILEPATH** | *Value Example*: \\path\path\path\path\document.doc<br>*Description*: The local path to the original file from where it was collected.<br>*Notes*: In event of de-duplication, include filepaths for all documents removed during de-duplication process in this field. |
| **FROM** | *Value Example*: Paul Mains pmains@somecompany.com; Yesselyn Santiago yesselyn.santiago@somecorporation.com<br>*Description*: The name and email address of the individual who wrote the FROM email. |
| **LASTACCESSEDBY** | *Value Example*: Jason Doe<br>*Description*: Name of person that was last one to access document prior to providing document to the processing team. |
| **LASTMODDATE** | *Value Example*: 01/02/2012<br>*Description*: The application recorded date the file was last modified. Please use the MM/DD/YYYY format. |
| **MODIFIEDTIME** | *Value Example*: 4:34:00 PM<br>*Description*: The application recorded time the file was last modified. |
| **NATIVELINK** | *Value Example*: \VOL001\NATIVES\ABC0000001.docx<br>*Description*: Path to the Exported / Processed Native File. |
| **PRINTDATE** | *Value Example*: 4/2/2015<br>*Description*: The application recorded date the file was last printed. Please use the MM/DD/YYYY format. |
| **RECEIVEDDATE** | *Value Example*: 01/25/2008<br>*Description*: The date captured by the mail store as to when the email was received. Please use MM/DD/YYYY format. |

# DATA PRODUCTION SPECIFICATIONS

**United States Attorney's Office**
**Southern District of Florida**



| | |
|---|---|
| **SUBJECT** | *Value Example*: Prepared meeting notes for review. |
| *Description*: | The subject of the email. |
| *Notes*: | Indicate whether text was extracted or OCR'd |
| **DOCREQUEST** | *Value Example*: 2(a). |
| Description: | The particular document request to which the document is responsive. |

CID No.: 2021-SP-DMR/INT-01
Definitions

1. "Respondent," "you," "your" and/or "SimfaRose" shall mean SimfaRose Pharmacy, any of its related entities (to include predecessor and successor entities, affiliates, branches, or offices, including but not limited to KGJ Enterprises and SimfaRose Pharmaceutical Specialty Inc.), and any person acting on its behalf, including but not limited to its officers, owners, shareholders, employees and/or attorneys, consultants, accountants, investigators, representatives or agents.

2. "Documentary material," "document," or "documents" shall mean all writings, recordings, papers, tangible things, or electronically produced or stored matters of any kind whatsoever, including but not limited to all originals and non-identical copies or reproductions of all records, paper, communication, correspondence, tabulation, chart, diaries, appointment books, calendars, schedules, journals, notes, memoranda, reports, minutes, notices, charts, graphs, tables, bulletins, financial statements, balance sheets, asset lists, ledgers, letters, correspondence of any kind, contracts, agreements, negotiable instruments, time records, bills, invoices, pay slips, pay stubs, bank statements, cancelled checks, pay roll information, notepads, notebooks, postcards, telegrams, facsimiles, telexes, films, microfilms, photographs, videotapes, slides, motion pictures, diagrams, models, drawings, recordings, tapes, transcriptions, books, publications, phone records, electronic mail, voice mail, computer files (or any other information or data compilations stored in or accessible through computer or other information retrieval systems, together with instructions and all other materials necessary to use or interpret such data compilations), and other things, whether prepared by handwriting, printing, typing, photostating, photographing, electronic recording, or any other means of recording, communication or representation, including letters, words, pictures, sounds or symbols, or combinations thereof.

3. "Relating to" or "relate" shall mean consisting of, referring to, reflecting, supporting, evidencing, prepared in connection with, used in preparation for, or being in any way legally, logically, or factually connected to the matter discussed.

4. "And," "or," and "and/or" shall be construed either disjunctively or conjunctively so as to bring within the scope of these requests any information which might otherwise be construed as outside their scope.

5. The singular and plurals forms of any word shall be construed interchangeably so as to bring within the scope of these requests any information which might otherwise be construed as outside their scope.

6. "Communication" includes, but is not limited to, all written, electronic or oral discussions, statements, conversations, memoranda, notations, letters, correspondence, emails, text messages, instant messages, notices or any documents, whether or not you were a participant or had personal knowledge thereof.

7. "Opioid(s)" means all products containing opioids or opiates, including but not limited to all products containing buprenorphine, butorphanol, codeine sulfate, fentanyl, hydrocodone bitartrate, hydromorphone, levorphanol tartrate, meperidine hydrochloride, methadone hydrochloride, morphine sulfate, oxycodone, oxymorphone, tapentadol, or tramadol.

8. "Remuneration" means any payment or other benefit made directly or indirectly, overtly or covertly, in cash or in kind. This definition includes, but is not limited to, gifts, entertainment, meals, travel, and honoraria.

9. "Policy" or "Policies" mean any rationale, method, or course of action that is used in order to conduct business transactions, whether written or unwritten.

10. "Employee" means any person, including but not limited to an employee, volunteer, independent contractor or agent, all past and present directors, officers, agents, representatives, accountants, advisors, and consultants who acted or purported to act on Your behalf or who performed any service for You under Your name, whether on a full-time, part-time, piece-work, commission, or other basis, and whether paid or unpaid.

11. "REMS program" refers to any Risk Evaluation and Mitigation Strategy approved by the U.S. Food and Drug Administration, including the Transmucosal Immediate-Release Fentanyl REMS and the Extended-Release and Long-Acting Opioid Analgesics REMS.

## CID No.: 2021-SP-DMR/INT-01
### Interrogatories

For the period beginning January 1, 2015, to the present (unless stated otherwise):

1. Describe the ownership and management structures of SimfaRose, nationally and regionally. Identify any changes in the ownership and management structures and the date(s) of any such changes.

2. Describe SimfaRose's compliance program(s), and identify any individuals with responsibilities related to compliance, nationally and regionally. Identify any changes in SimfaRose's compliance program(s) and the date(s) of any such changes.

3. Identify all Medicare provider numbers, Medicaid provider numbers, Tax ID numbers, and DEA numbers used by SimfaRose during the Relevant Time Period, and the dates when each number was used.

4. Identify all current and former SimfaRose executives, management personnel, and employees, indicating whether current or former, as well as titles, dates of employment, any available contact information, and social security numbers.

5. Identify any and all licenses or legal authorities SimfaRose relies on to dispense pharmacy products by mail.

6. Describe Your document retention and destruction policies in effect during the Relevant Time Period.

7. Identify the name, address, telephone numbers, and point of contact for all wholesalers, manufacturers, or suppliers from whom You purchased products dispensed at SimfaRose during the Relevant Time Period. List all products You purchased from each wholesaler, manufacturer, or supplier during the Relevant Time Period.

8. Have you ever been referred to a state licensing board for any reason? If so, please describe, including:
   a) Date of referral
   b) Stated reason for referral
   c) Who made the referral
   d) Result or outcome of referral

9. List all remuneration You have received from any prescription drug manufacturer, distributor, or wholesaler; laboratory, medical practice, physician/group, or health care professional, and for each item list:
   a) Payor
   b) Primary contact at payor
   c) Item (e.g., payment, meal, entertainment event, check)
   d) Actual or estimated dollar value
   e) Date
   f) Location
   g) Agreement(s), if any, specifying terms of payment
   h) Services performed by You
   i) Type of event, if any (e.g., promotional speaking event)
   j) List of attendees, participants

10. Describe Your opioid prescribing/dispensing policies and practices, including but not limited to policies regarding:
    a) Compliance with any REMS program
    b) Compliance with the Controlled Substances Act
    c) Compliance with prescription drug monitoring programs
    d) Prescription compliance monitoring, such as urine drug testing and use of prescription drug monitoring program data

11. Identify all investigations, audits, or inquiries into your prescribing/dispensing, including:
    a) Investigating entity
    b) Time period
    c) Patients or drugs under investigation
    d) Points of contact at investigating entity
    e) Resolution

**CID No.: 2021-SP-DMR/INT-01**
**Documentary Material Request**

For the period beginning January 1, 2015, to the present (unless stated otherwise), produce:

1. Provide all documents related to your response to Interrogatory 1, including all organizational charts for any part of the Relevant Time Period.
2. All documents, including but not limited to medical records, prescription data or history, patient profile information (complete prescription histories at Your pharmacy), and claims information, related to the patients listed in Table A, attached.
3. Complete client file.
4. All documents related to any agreements, arrangements, or relationships (including any investment or ownership interests), whether written or unwritten, formal or informal, between You and any prescription drug manufacturer, distributor, supplier, or wholesaler; laboratory, medical practice, physician/group, or health care professional, including all related records, communications, and agreements.
5. All documents related to any remuneration offered/provided to You by any prescription drug manufacturer, distributor, or wholesaler; laboratory, medical practice, physician/group, or health care professional, including all related records, communications, and agreements.
6. All documents related to Your opioid prescribing/dispensing policies and practices, including but not limited to policies regarding (1) compliance with any REMS program, (2) compliance with the Controlled Substances Act, (3) compliance with prescription drug monitoring programs, or (4) prescription compliance monitoring, such as urine drug testing and use of prescription drug monitoring program data.
7. All documents and communications related to prescribing by the following providers, including but not limited to communications with the providers about their prescriptions, or internal communications about whether to fill or deny prescriptions from these providers:





8. All documents related to any internal or external investigation, audit, review, or inquiry related to Your prescribing/dispensing practices or to any patient for whom You dispensed medications, including any investigations, audits, reviews, or inquiries by federal or state regulators or programs (e.g. Medicare, Medicaid, TRICARE, Veterans Affairs, AHCA, etc.), private insurers, opioid distributors, opioid manufacturers, opioid wholesalers, or state licensing boards.

9. All documents related to any adverse event experienced by any patient prescribed an opioid by You, including any overdose, complication, or death.

10. All documents related to prescription drug coverage under any federal or state health care program, including Medicare, Medicaid, TRICARE, Veterans Affairs, the Federal Employee Health Benefits Program, or state or federal workers' compensation programs.

11. All documents, including but not limited to all internal and external communications, notes, policies, agreements, all shipment records, all pre-authorizations and requests submitted to insurance for approval, marketing materials, presentations, records of speaking engagements, and meeting minutes, related to all forms/variations of the following prescription drugs:

| |
|---|
| TRELSTAR MIXJECT |
| TESTOSTERONE POWDER |
| HARVONI |
| SOVALDI |
| SUBSYS |
| SANCUSO |
| ZYTIGA |
| LUPRON DEPOT |
| OXYCONTIN |
| OXYCODONE |
| OLYSIO |
| AVASTIN |
| ENDARI |
| HYDROMORPHONE |
| HYDROCODONE |
| ALPRAZOLAM |
| MORPHINE SULFATE |
| FENTANYL |
| EPCLUSA |
| MAVYRET |
| ENDARI |
| FIRMAGON |

12. All documents related to the sale or purchase of medications and products, including but not limited to sales invoices and other sales documents. For each purchase by SimfaRose, include the

National Drug Code (NDC), product description, total quantity purchased, and returns and back orders.

**CID No.: 2021-SP-DMR/INT-01**
**Declaration of Compliance**
(Documentary Material)

I have responsibility for producing the documentary material required by Civil Investigative Demand No.: **2021-SP-DMR/INT-01**. I hereby certify that all the documentary material required by the Civil Investigative Demand and in the possession, custody, or control of the person to whom the Demand is directed has been produced and made available to the false claims law investigator or custodian identified in the Demand.

If any such material has not been produced because of a lawful objection, the objection to the document request and the reasons for the objection have been stated.

I declare under penalty of perjury under the laws of the United States of America, 28 U.S.C. § 1746 that the forgoing is true and correct.

Executed on _____         _____
           Date                                              Signature

                                                            _____
                                                            Title



CIVIL INVESTIGATIVE DEMAND
TABLE A

CID No.:    2021-SP-DMR/INT-01

| NAME | DOB |
|------|-----|