UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: [1:22-mc-20422-JEM]

UNITED STATES OF AMERICA

    Petitioner,

v.

SUZETTE BONANNO;
CHARLES BONANNO; and
SIMFA ROSE PHARMACEUTICAL
SPECIALTY, INC.,,d/b/a
SIMFAROSE PHARMACY,

    Respondents.

_____/

**MEMORANDUM OF LAW IN OPPOSITION OF THE UNITED STATES' PETITION FOR SUMMARY ENFORCEMENT OF CIVIL INVESTIGATION DEMAND (CID) 2021-SP-DMR/INT-01 AND IN SUPPORT OF RESPONDENTS' CROSS MOTION FOR A PROTECTIVE ORDER**

    I, Pat Bonanno, Esq., am recently retained counsel to SimfaRose, *et al.*, above respondents and submit this Memorandum of Law in Opposition of the United States' Petition for Summary Enforcement of Civil Investigation Demand (CID) 2021-SP-DMR/INT-01 and in Support of Respondents' Cross Motion for a Protective Order and further relief.

## THE CIVIL INVESTIGATIVE DEMAND (CID)

The CID issued by the United States Attorney for the Southern District of Florida was purportedly served on the respondents on Friday March 26, 2021 at approximately 4:30 p.m. by John Mejia, an investigator with HHS OIG who is involved with the underlying investigation and who participated in the meet and confer communications between the parties regarding the scope of the CID[1]. The CID seeks information and documents from respondents for a period that spans more than six (6) years (*i.e.*, "January 1, 2015 to the present").

The CID demands production of "[a]ll documents" that relate to, refer to, or are "in any way . . . connected to" numerous broad and general categories such as "all documents related to prescription drug coverage under any federal or state health care program," "all documents related to the sale or purchase of medications and products" since January 1, 2015/related to each and every "medication[] and product[]" the pharmacies purchased or sold since January 1, 2015. The overbreadth of the CID mandates the production of every single prescription respondent has filled for the past six (6) years), and a list of every single prescription drug that these respondent purchased for the past six (6) plus years.

The CID also demands "[a]ll documents related to prescribing" by twenty (20) physicians, including without limitation, every prescription order they submitted to the pharmacies and communications with these physicians "about their prescriptions," "[a]ll documents" related to twenty two (22) drugs, and "[a]ll documents" related to thirty (30) patients listed in the annexed

---

[1] Attorneys Andrea L. Wolfson and John Tartaglia have represented respondents in connection with the CID prior to the *Pro Hac Vice* admission of Attorney Thomas Gambino and Counsel herein.

Table A, "including but not limited to medical records, prescription data or history, patient profile information (complete prescription histories . . . ) and claims information."

Ms. Andrea Wolfson, SimfaRose's attorney for many years, is one of the patients in Table A to the CID as to whom the government sought a wide array of private and protected health information and documents, including all of Ms. Wolfson's medical and prescription records, her entire "patient profile," and her complete prescription history.

## RESPONDENTS' HAVE MADE EXTENSIVE EFFORTS TO MEET, CONFER AND COMPLY WITH THE CID

Despite the government's unwarranted, intrusive, and baseless demand for respondents' attorney's medical records, respondents have used good faith efforts to comply with the CID.

The Declarations of Attorney Andrea L. Wolfson and Attorney John Tartaglia outline a somewhat nefarious scheme by the government to deprive respondents right to counsel under the United States Constitution Sixth Amendment. Indeed, the Declarations of Attorney's Wolfson and Tartaglia detail that Petitioner's counsel, without any evidentiary or factual basis whatsoever allegedly published claims that Ms. Wolfson, a fellow member of the bar in good standing and officer of the Court for forty one (41) years, is a criminal and complicit with SimfaRose in a scheme to fraudulently bill for medically unnecessary drugs prescribed to her or that SimfaRose "did not fill her prescriptions or fraudulently billed for them" or that Ms. Wolfson was otherwise "a victim of improper dispensing by SimfaRose" thus making her a potential fact witness for the government against SimfaRose and excluding her from representing respondents.

3

The government demanded that respondents and their counsel produce sufficient evidence within seven (7) days to refute its bare conclusory allegations of a potential conflict of interest from Ms. Wolfson's continued representation of SimfaRose and that Ms. Wolfson was not involved in scheme to defraud the government or otherwise a fact witness in this matter.

In the face of these baseless and alleged defamatory accusations respondents and Ms. Wolfson provided the government with all of the documents it demanded to assess its potentially libelous accusations as against a fellow Officer of the Court.

Moreover, as detailed in the Declaration of Attorney John Tartaglia, respondents have made extensive efforts to comply with the CID and are continuing those efforts to this date, not withstanding respondents continuing objection to the validity of the CID at issue.

## THE GOVERNMENT'S UNLAWFUL SEIZURE AND RETENTION OF RESPONDENTS PROPERTY RENDERS RESPONDENTS' INCAPABLE OF FURTHER RESPONDING TO THE CID

On December 17, 2021 Drug Enforcement Agents (DEA) in conjunction with local police and other law enforcement authorities executed an Administrative Warrant as against respondents seizing documents and property far exceeding the scope of any lawful authority. The Declarations of Charles Bonanno and Attorney Andrea L. Wolfson detail the abusive and unconstitutional use of force used, with the apparent consent of petitioner herein, to seize all business documents and personal property of respondents in a devious fishing expedition for discovery against respondents. The unlawful seizure of respondents and their property, including documents, cell phones, and computers, has rendered respondents incapable of any further compliance with the CID as the government is now in possession of all documents they seek and respondents have no means to re-create the documents unlawfully confiscated.

## THE GOVERNMENT'S APPARENT RELATIONSHIP WITH AND INFORMATION OBTAINED FROM FORMER SIMFAROSE EMPLOYEE, LORALEI PARCHEIO, MUST BE VIEWED AS HIGHLY INCREDIBLE AND SUSPECT

As detailed in the Declaration of Attorney John Tartaglia, the government's investigation and the CID are based solely on some unspecified algorithm or statistical analysis of PDMP and Medicare claims data and false statements made by Loralei Parchejo, a former SimfaRose employee that is a defendant in pending civil litigation SimfaRose filed as a result of her intentional breach of a non-competition agreement. In fact, there is currently a temporary injunction barring Ms. Parcheio from working for SimfaRose's competitor, as well as the Court having found her testimony under oath about material facts untruthful.

Upon information and belief, petitioner is aware of these facts having ordered the hearing transcripts in which Ms. Parcheio allegedly gave false testimony. Nevertheless, petitioner claims in conclusory fashion and without providing any factual support, other than that presumably supplied by an incredible witness, that the Court should enforce the CID because it is reasonably relevant to her investigation by seeking documents and information she has "reason to believe" are in respondents possession and would show that respondents "billed Medicare and other federal health care programs for medications they did not dispense."

## THE GOVERNMENT'S ISSUANCE OF THE CID IS BARRED BY 31 U.S.C. § 3733

Petitioner's argues that the CID at issue should be enforced solely because "the United States Attorney General ..." has "the authority to investigate violations of the FCA" and that the "CID seeks evidence that is relevant and material to the United States investigation." Petitioner's Memo of Law at page 2, paragraph 2. Petitioner disregards the undisputed facts that the instant

CID it is duplicative of three (3) prior subpoenas that the U.S. Attorney's Office issued as part of its investigation of Sancuso and SimfaRose and in connection with a New Jersey *qui tam* case against the Respondents. Petitioner submits reasoning that because the Southern District of Florida U.S. Attorney's office's investigation is "separate" and unrelated, Respondent's must comply with the CID in question. Petitioner does not even attempt to offer any factual details or explanation tending to support this conclusory assertion. This is not surprising because, as set forth in the Declaration of John A. Tartaglia, III, who unlike petitioner's counsel has personal knowledge of the facts of the Sancuso investigation, the New Jersey *qui tam* case, and the underlying CID investigation herein, there is no factual support for petitioner's claim.

Petitioner's argument that the scope of the investigations are different is belied by the fact that the government is demanding that SimfaRose reproduce the very same documents it previously produced to the U.S. Attorney's Office in response to the New Jersey subpoenas. The government does not even attempt to offer any explanation of how they allegedly differ. Moreover, Petitioner refuses to revise the duplicative demands in the CID so that they are tailored to seeking only the information and documents related to the allegedly different scope of the instant Sancuso investigation. The CID not only duplicates, almost verbatim, the New Jersey subpoenas, it is even broader than those subpoenas by seeking "All documents related to Sancuso." Thus, petitioner is merely attempting to abuse the broad authority of the CID to go over matters already adjudicated meritless by the U.S. Attorney's Office following a full investigation.

The government can only issue a CID "before commencing a civil proceeding under section 3730(a) or other false claims law or making an election under section 3730(b)." 31 U.S.C. § 3733(a)(1). *U.S. ex rel. Silva v. VICI Marketing, LLC*, No. 8:15-cv-444-T-33TG3, 2020 WL 1677335 at *1-*2 (M.D. Fla. April 4, 2020) ("[t]he United States may not issue CIDs to someone

in order to support an FCA case that it has already filed or in which it has already made its intervention decision"). The FCA does not contain any specific requirements or proscribe any particular procedure or form for making an election under section 3730(b). Instead, it provides that an election is made in one of two broad and general circumstances. That is, the government makes an election when it decides to "proceed[] with the action" or "notifies the court that it declines to take over the action." 31 U.S.C. § 3730(b)(4)(A) & (B).

In the New Jersey *qui tam* action, on June 28, 2017, the government filed an *ex parte* motion to unseal the case upon filing of its notice of election and to partially lift the seal to allow the relator and Galena to mediate the relator's claims for attorney's fees. In this motion, the government stated that it is currently negotiating a settlement with one of the defendants (*i.e.*, Galena) and that should those negotiations be successful, it "anticipates filing a Notice of Election to intervene for the purpose of settlement with on defendant [Galena] and to decline intervention against all other defendants" and that it "anticipates filing its Notice of Election within 45 days." The Court entered an Order granting this motion on June 29, 2017. On September 9, 2017, the government filed its notice of election to intervene as to Galena with respect to claims predicated upon certain factual allegations set forth in the notice and it declined intervention as to all other claims alleged in this action against Galena. The government and the relator also agreed to voluntarily dismiss all claims against Galena upon the government's receipt of the initial payment due under the settlement agreement between the government, the relator, and Galena.

Petitioner does not dispute that the government made an "an election under section 3730(b)" on September 8, 2017 by filing its notice of election and that this election deprives the government of the authority to issue a CID under 31 U.S.C. § 3733(a)(1). Instead, petitioner argues that this election does not bar the issuance of the subject CID because it was a purported partial

intervention in the action as to Galena and not an election as to the respondents. This argument asks the Court to do something it cannot – ignore the language of the statute and rewrite section 3730(a) by adding into it the requirement of making an election under section 3730(b) "as to the person to whom the CID issued." *Silva-Hernandez v. U.S. Bureau of Citizenship & Immigration Servs.*, 701 F.3d 356, 361 (11th Cir. 2012) (the court "cannot add to the terms of a provision what Congress left out"). There is nothing in the plain language of section 3733(a)(1) to support petitioner's argument. The statute clearly provides that a CID can only be issued before "making <u>an</u> election under section 3730(b)" and nothing more. It does not say that the election must be made as to any particular party or matter.

Additionally, the case law construing the FCA specifically rejects the claim-by-claim, defendant-by-defendant approach to intervention petitioner offers here to get around respondents' authority objection based upon the September 8, 2017 notice of intervention. These cases hold that there is no such thing as a "partial" intervention under the FCA that is limited to certain claims or to certain defendants. Rather, when the government makes "an election" to intervene in a FCA *qui tam* case such as it did with the September 8, 2017 notice of election, the government becomes a party to the action and takes over the entire "action" or case and all of the claims as to all of the defendant, including all unsettled claims against the respondents herein. *U.S. ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 931-33 (2009) (the government becomes a "party to the litigation" when it intervenes in accordance with section 3730); *U.S. ex rel. Bennett v. Biotronik, Inc.*, 876 F.3d 1011, 1016 & 1019-21 (9th Cir. 2017) (government's notice of partial intervention only as to certain "covered claims" it settled with the defendant is an election to intervene as a party in and take over the entire "'lawsuit,' 'action,' 'case,' and 'litigation' as a whole, 'unsettled claims and all,'" "and 'not merely to an allegation or charge'"); *U.S. ex rel. Brooks v. Stevens-Henager College*,

8

*Inc.*, 359 F.Supp.3d 1088, 1124 (D. Utah 2019); *U.S. ex rel. Gadbois v. PharMerica Corp.*, 292 F.Supp.3d 570, 577 (D.R.I. 2017) ("The plain language of the statute makes clear that intervention serves to make the Government a party to the entire suit" not just as to certain claims or causes of action or only the extent of certain drugs billed to Medicare).[2]

Thus, the government's September 8, 2017 notice of election constitutes "an election" made "under section 3730(b)" which in turn triggers the CID limitations in section 3733(a)(1).[3] As such, the government lacked the authority to issue the CID at all and certainly not as to Sancuso.

In addition to lacking legal support, the facts of the New Jersey *qui tam* action, which petitioner fails to reveal, refute the assertion that the government did not make an election as to the respondents herein until July 12, 2021. Petitioner notably does not claim that the government decided not to intervene in the New Jersey *qui tam* case on or around July 12, 2021 (or that the government had not made this decision long ago as it stated in their motion filed on June 28, 2017), or that it took the government nearly seven (7) years to investigate the alleged false claims in this case and determine whether to intervene against the respondents.

Any such claim would be "absurd" based on the lengthy amount of time between when the case was filed on September 19, 2014 and the purported notice of election that was filed on July 12, 2021. When the government filed its formal notice of election not to intervene against respondents, the case had been pending and under seal for nearly seven (7) years, or 2,475 days,

---

[2] *See also, Gadbois*, 292 F.Supp.3d at 578 (by making an election to intervene, "the Government became a party to [the relator's] whole action – every allegation, every cause of action – even if it elected only to proceed with (and ultimately settle) the claims related to controlled Schedule II drugs.")

[3] Notably, the government did not need to file any notice of election to settle with Galena and dismiss it from the case, which further demonstrates that the government's September 8, 2017 notice of election does not have the limited reach petitioner attempts to ascribe to it. *U.S. v. Everglades College, Inc.*, 835 F.3d 1279, 1286 (11th Cir. 2017*); U.S. ex rel. Ridenour v. Kaiser-Hill Co., LLC*, 397 F.3d 925 (10th Cir. 2005).

9

which is more than sixty (60) times the number of days Congress found to be adequate for the government to investigate and determine whether to intervene, more than twice the length of an intervention investigation that another court held was "unacceptable" and "borders on the absurd," and over two (2) years (approximately eight hundred (800) days) longer than an intervention investigation of virtually identical FCA claims against a pharmacy that another court recently held was "unnecessarily prolonged and delayed" to the point of warranting dismissal for lack of prosecution under Rule 41(b). *U.S. ex rel. Gharibian v. Valley Campus Pharmacy, Inc.*, No. 2:16-cv-04777-MCS-PLA, 2021 WL 4816648 at*1, *1-*5 & *7 (C.D. Cal. June 23, 2021); Martin, 912 F.Supp.2d at 625-26 (it is "unacceptable" for the government to take 24 times longer than the 60 day election period Congress explicitly determined to be an adequate to "make up its mind" on whether to intervene in *qui tam* cases involving extensive fraud claims against multiple state and federal government agencies); *U.S. ex rel. Brasher v. Pentec Health, Inc.*, 338 F.Supp.3d 396, 397-99 & 401 (E.D. Pa. 2018) (five (5) year investigation more than enough for the government to make its election decision); S. Rep. No. 99-345 at 24-25 (1986) ("with the vast majority of cases, 60 days is an adequate time to allow Government coordination, review, and decision"). *See also*, 31 U.S.C. § 3730(a) ("The [government] shall *diligently* investigate a violation [of the FCA]") (Emphasis added).

The Declaration of John A. Tartaglia, III further demonstrates in detail numerous undisputed facts that petitioner conveniently omits from the petition papers which establish that the government decided four (4) years before the CID was issued not to pursue any of the allegations or charges against the respondents.

Moreover, the government's unlawful seizure of SimfaRose's records under the guise of the Drug Enforcement Inspection Warrant executed on Simfarose on December 17, 2021, places

the respondents in a position where they cannot certify anything at all with any degree of certainty, let alone certify, "under the penalty of perjury," that what has been produced at any point, is or was "all the documents in its possession, custody, or control." [4] The government could for example even intentionally destroy or alter any one of the documents in its possession that it seized, lawfully or unlawfully, and contend that it was or was not included in SimfaRose's previous productions or any further production the Court may Order and SimfaRose would have no way to know or even attempt to contest its claims. Compelling them to do so would only unfairly subject them to potential false statement liability, which the government could pursue at a whim regardless of the fact that its speculative FCA theories lack merit. The government should not be allowed to benefit from its unauthorized inspection and seizure that in essence renders respondents unable to verify what documents have been seized that are responsive to the CID.[5]

---

[4] Upon information and belief, the government has yet to file the Return of the Inspection Warrant. To the extent this Court is empowered to Order same we respectfully request this Court require the government to satisfy its obligation for same.

[5] Should this Court find that respondents are required to further respond to the CID, we respectfully request a Protective Order be issued to safeguard the confidential patient and employee information to be produced and already in the possession of the government as a result of the over broad and sweeping seizure of records during the December 17, 2021, Inspection Warrant.
  The "Eleventh Circuit has created a four factor test to determine whether good cause exists for the issuance of a protective order, which includes: (1) the severity and the likelihood of the perceived harm; (2) the precision with which the order is drawn; (3) the availability of a less onerous alternative; and (4) the duration of the order ." *Gunson v. BMO Harris Bank, N.A.*, 300 F.R.D. 581, 583 (S.D. Fla. 2014) (citing *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987)). Consistent with these factors, courts within this District commonly enter confidentiality and protective orders when agreed to by the parties. *See, e.g., Whitwam v. JetCard Plus, Inc.*, No. 14-CV-22320, 2015 WL 1014292, at *1 (S.D. Fla. Jan. 21, 2015) (entering a Stipulated Confidentiality and Protective Order) ; *Gutescu v. Carey Int'l, Inc.*, No. 01-4026-CV- GOLD/SIM, 2002 WL 34245136, at *1 (S.D. Fla. Aug. 8, 2002); *Tracfone Wireless, Inc. v. Simply Wireless, Inc.*, No. 1:15-CV-24565, 2016 WL 4581320, at *1 (S.D. Fla. Aug. 16, 2016).

## CONCLUSION

For the above reasons, including all Declarations and Exhibits attached hereto, Respondents respectfully requests that this Court deny the Petition to enforce the CID and deem that respondent's have complied under 31 U.S.C. § 3733, that petitioner lacks the statutory authority to issue the CID in controversy or in the alternative should this Court grant petitioner's relief, issue an Order that petitioner supply respondents with a detailed description of all records seized as a result of the December 17, 2021 Administrative Warrant and issue a Protective Order prohibiting the further use and/or dissemination of confidential patient records and employee records obtained by Petitioner.

Dated: White Plains, New York
      April 4, 2022

                                Respectfully submitted,
                                Pat Bonanno & Associates, P.C.

By:    Pat Bonanno, Esq. (PB 8549)
         Attorneys for Respondents
         175 Main Street
         White Plains, NY 10601
         pbacounsel@gmail.com
         (914) 948-5545 (Phone)

**SMITH, GAMBRELL & RUSSELL, LLP**

*/s/ Scott S. Gallagher*
Richard D. Rivera
Florida Bar No. 108251
rrivera@sgrlaw.com
50 North Laura Street, Suite 2600
Jacksonville, Florida 32202
Tel: (904) 598-6157
Fax: (904) 598-6257

*Local Counsel for Respondents*

## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2022, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Richard D. Rivera*
Attorney

13