UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: [1:22-mc-20422-JEM]

UNITED STATES OF AMERICA

    Petitioner,

v.

SUZETTE BONANNO;
CHARLES BONANNO; and
SIMFA ROSE PHARMACEUTICAL
SPECIALTY, INC.,,d/b/a
SIMFAROSE PHARMACY,

    Respondents.

_____/

## DECLARATION OF ANDREA L. WOLFSON, ESQ., IN OPPOSITION OF THE UNITED STATES' PETITION FOR SUMMARY ENFORCEMENT OF CIVIL INVESTIGATION DEMAND 2021-SP-DMR/INT-01

Pursuant to 28 U.S.C. § 1746, I, Andrea L. Wolfson, Esq., herby declare under penalty of perjury as follows:

1. This Declaration is made in opposition of the United States' Petition for Summary Enforcement of Civil Investigation Demand 2021-SP-DMR/INT-01 (CID) as against the above named Respondents.

2. I have been licensed to practice law in the state of Florida for over forty-one years.

3. In my capacity as a practicing lawyer in the state of Florida approximately 15 years ago I entered into an agreement with Simfa Rose Pharmacy, Inc. and Charles Bonanno, Pharm. D. and Suzette

Bonanno, Rpht. to represent them at a meeting with Susan Langston, U.S. Department of Justice, Drug Enforcement Administration, Director of Drug Diversion.

4. I asked that Ms. Langston communicate with my office to schedule the meeting. Although, at that time no allegations of wrongdoing under State of Florida Statutes, Department of Pharmacy or Federal Statutes had been served on Simfa Rose or its principals. Nevertheless, the Bonannos wanted to cooperate with the DEA's request as they were firmly opposed to the illegal diversion of any drugs.

5. Upon entering the DEA Offices, my clients, another attorney, Donald McCoy, Esq. my paralegal and me were forced to remove our cell phones and hand bags to the DEA. Our Belongings were locked up outside of our presence.

6. We were sent to meet with three members of Ms. Langston's Diversion Control Team and Ms. Langston. We were advised that if Simfa Rose and its principals did not voluntarily give up its legally obtained DEA license that several disciplinary charges would be filed against them.

7. I explained that we were in attendance voluntarily, that my clients had not been charged with anything or provided with any facts that would or could be construed as violating the applicable legislation and/or regulations. Therefore, we would wait to receive and review the alleged disciplinary charges or facts leading up to same before considering handing over my clients DEA licenses.

7. Ms. Spaulding and her team were visibly upset. After approximately one more hour we were allowed to leave the DEA Office. Our belongings were returned to us after we were outside of the DEA office suite.

8. Over the next fifteen years I continued to represent the pharmacy and the Bonannos in several and various civil and administrative trial matters, corporate matters, employment disputes, *etc.*

9. Over the course of the next fifteen years CMS, DOJ and state of Florida Agencies audited Simfa Rose without grounds, filed various disciplinary actions against the pharmacy and Bonannos, including but not limited to accusing them of filing false claims with Medicaid. CMS unreasonably scrutinized the pharmacy's and the Bonanno's practices but failed to prove that Simfa Rose Pharmacy or the Bonannos' were guilty of any wrongdoing.

10. I continued to represent the pharmacy and the Bonannos with purchasing another small retail/compounding pharmacy, appearing with them before the Drug Enforcement Agency and acting as In House Counsel through the present time.

11. In 2020, a minimum of twelve years after the DEA and other agencies failed to prove that my clients were guilty of any wrongdoing or violations of state of Florida and/or Federal laws promulgated for the governance of pharmacists and the practice of pharmacy, including but not limited to the False Claims Reporting Act or illegal sale or manufacture of controlled substances, the DOJ served my clients with a Civil Investigative Demand (CID) requesting production of hundreds of pages of records of a certain patient and a doctor be produced to them under the False Claims Act.

12. I responded to AUSA Schild and her investigator's, Ms. Schwanke's allegations and advised her that I represented the pharmacy and the Bonannos and that we would need additional time but would produce any documents that were in the pharmacy's possession and that were relevant to the CID.

13. As soon as I started questioning and objecting to production of documents described in its CID on the basis of attorney/client privilege, the relevance of documents to the CID served on my clients, I became the target of the AUSA's investigation.

14. The DOJ insisted that I should be disqualified from representing the parties because I had an alleged conflict of interest. The pharmacy had been filling my prescriptions which included in part opioid

medications that were necessary for the treatment of failed back syndrome, Multiple Myeloma, broken vertebrae, and other relevant, chronically painful conditions.

15. When AUSA's office decided that they no longer wanted to pursue the Conflict Issue they attacked me for taking pain medication and suggested that I should not be representing the pharmacy and the Bonannos because I suffered from chronic pain which required treatment with a combination of medications called a "trilogy".

16. On or about December 17, 2021 Mrs. Bonanno telephoned me and asked that I come to the store. Apparently, Ms. Schild and Ms. Schwanke decided to request an Order Allowing them to raid the store and remove my client's property.

17. At all times material to the AUSA's filing of the Petition for Unilateral Relief AUSA knew I represented the pharmacy and the Bonanno's. In fact, I had just agreed with Mr. Tartaglia, co-counsel out of New York, New York, to provide much if not all of the information the AUSA had requested by on or before the 10th of January, 2022.

18. I was an attorney of record for Simfa Rose Pharmacy and the Bonannos. AUSA Schild, in violation of the Rules Regulating the Florida Bar, and the Federal Rules of Civil Procedure failed to advise the issuing court that the respondents were represented by counsel or that she personally and actively negotiated at least a partial resolution of the dispute she refers to in her Petition.

19. Ms. Schild, in violation of the Federal Rules or Civil Procedure and the Rules Regulating the Florida Bar failed to email a Petition for Unilateral Relief to the undersigned before filing it or bringing it to a hearing.

20. Ms. Schild, Esq. instructed DEA agents, Pembroke Pines Police, and local FBI to hold Dr. Bonanno prisoner in a room in the pharmacy while they raided his place of business and removed his

personal and business property. When I arrived at the pharmacy and asked to speak with my client I was refused access to him.

21.     Dr. Bonanno was complaining of chest pain and was exhibiting extremely high blood pressure. When I asked that he be allowed to see a physician, the DEA agent with whom I spoke told me that "he knew who I was" and if Bonanno fainted he would call an ambulance. Ms. Schwanke and AUSA Clarissa Schild, ordered the agents in attendance at the raid that I was not allowed access to my client under any circumstances.

22.     During the forty plus years that I practiced law in Florida and in New York I have never witnessed such clear and intentional disregard of a citizen's constitutional right to counsel, equal protection and due process of the law. During the early years of my I was a Reginald Heber Smith Fellow charged with filing actions on behalf of citizens who were denied their rights to equal educational opportunities because of their race or disabilities.

23.     **On December 17, 2021 I witnessed Dr. Bonanno and his family being humiliated in front of their customers and members of the public who passed by their place of business while agents of various law enforcement agencies and the United States Attorney's office for the Southern District of Florida openly and intentionally violated the Bonanno's rights guaranteed by the Fifth and the Fourteenth Amendments to the <u>U.S Constitution</u>.  The Bonanno's were treated with less respect or regard than the victims of discrimination I represented during the late 1970's and early 1980's.**

Dated and signed on April 1, 2022 in Broward County, Ft. Lauderdale, Florida.

*Andrea L. Wolfson, Esq.*
ANDREA L. WOLFSON, ESQ.