UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Case No.: [1:22-mc-20422-JEM]

UNITED STATES OF AMERICA

    Petitioner,

    v.

SUZETTE BONANNO;
CHARLES BONANNO; and
SIMFA ROSE PHARMACEUTICAL
SPECIALTY, INC.,,d/b/a
SIMFAROSE PHARMACY,

    Respondents.

_____/

**DECLARATION OF CHARLES BONANNO IN OPPOSITION OF THE UNITED STATES' PETITION FOR SUMMARY ENFORCEMENT OF  CIVIL INVESTIGATION DEMAND 2021-SP-DMR/INT-01**

    **Pursuant to 28 U.S.C. § 1746, I, Charles Bonanno herby declare under penalty of perjury as follows:**

    1.    This Declaration is made in opposition of the United States' Petition for Summary Enforcement of Civil Investigation Demand 2021-SP-DMR/INT-01 (CID) as against the above named Respondents.

    2.    I am the Pharmacy Manager of Simfarose Pharmacy (Simfarose) (An Accreditation Commission for Healthcare Certified, ACHC Specialty Oncology Pharmacy) one of the named respondents herein.

    3.    On Friday, December 17, 2021, at approximately 9:30 am, I arrived at SimfaRose pharmacy where I noticed numerous police vehicles in the parking lot and remained unaware of the impending abuse of police authority I was to be subjected to.

    4.    I began to unlock the front door and proceeded to un-code the alarm. As I walked to the main area of the pharmacy, I was startled by fierce banging on the front door. I quickly

1

turned to see what that was, where at the door were about 15 large and intimidating police officers/DEA agents. The lead DEA agent, I later found out is named Ken, shouted at me to open the door or he was going to break it down.

5.      This terrifying banging began the moment they approached the door. The front door possesses a manual magnetic lock that must be turned off prior to the start of business. Confused and startled, I immediately called my wife, Suzette, fearing that this aggressive police behavior might manifest itself into a life threatening situation and told her to call our attorney. Frightened and fearful of any physical police aggression, I cautiously proceeded towards them to open the door.

6.      As I opened the door, all 15 men rushed in and scattered throughout the entire pharmacy. I was quickly approached by DEA agent Ken who DEMANDED that I hand over my personal cell phone, and then asked if I had any firearms on me or on inside the premises. Before I had time to respond, he told me, "we can do this the easy way, or the hard way." I complied with every demand because I have never had any prior bad contacts with law enforcement and am always respectful of appropriate police authority.  The officer then detained me in the front of the pharmacy, while all the other men were scattered throughout the building, not being able to witness what they were doing or taking from the Pharmacy.

7.      As I was detained in the lobby chair, not being able to leave, being held against my will, they searched the premises, and immediately dismantled the DVR (camera system that records live footage)1,  DEA agent Ken continually towered over me while I was sitting in the chair, he told me that I was not getting arrested, and to calm down, but they were there to search the premises pursuant to a civil investigatory warrant and handed me a document. Never in the 38 years as a pharmacist have I ever been exposed to the abusive and callous treatment inflicted upon me by the United States DEA Agents and the Pembrooke Pines Police that horrific morning under the guise of a CIVIL investigation.

8.      As I was being forcefully detained, I had no ideas what the Agents/Police were actual doing nor did they respond to my inquiries as to their actions.  I do recall hearing and

---

1 At about 9:45a.m. the live stream web cameras on my wife Suzette's phone went offline, presumably from the DEA/Police disabling the Pharmacy's security recording system.

briefly seeing Agents/Officers reviewing various administrative documents not located in the pharmacy area of the store.  They were opening and searching file cabinets and drawers not related to control substance items.

9.      At some point in my detention they walked me into the pharmacy area and  I noticed an individual who I presumed to be an "IT" investigator in my private office moving books, opening drawers, and inspecting my wife's personal computer and my personal laptop. They kept me in the pharmacy area for at least 3 hours asking me numerous amounts of questions. Those questions included where I kept the employee logbook, prescriptions, delivery tickets, policy and procedures, inventory statements, purchasing records, where the supply cabinet was located and key to the cabinet. They also asked for outdated merchandise and return records of all medications.  Furthermore, they continued to ask questions specifically regarding the bi-annual inventory of all controlled substances.  In past DEA Inspections, the normal procedure would be to allow me to make a copy for my records of any materials they had the authority to seize, but in this instance the Agents/Police confiscated all my records without asking. They further demanded to know where I kept the POA (power of attorney) documents, and where they were located. I was instructed to render a physical inventory count of Percocet 10-325mg, oxycodone 30mg, and Xanax 2 mg, again they did not give me a copy of the inventory record they performed.

10.      I was then approached by another IT individual (the younger of the group) and was asked for my password to access the QS1 software (QS1 Is the private software the Pharmacy uses to access and maintain patient information). He then proceeded to call the QS1 help desk to be given administrative permission to review all the QS1 records which holds all the

3

patient profiles, including all non-controlled substance patient profiles.

11.     Following the above seizure of all controlled substance and non-controlled substance patient information, I was then told to go into the Pharmacy office and what appeared to be the senior IT person demanded the passwords to log into my wife's personal computer. I informed the Agents/Police that this computer did not have any controlled substance information on it. They simply replied, "we don't care, we want access to it anyway." I didn't recall the password because again this was my wife's personal computer, so they insisted on obtaining the password and demanded I call my wife immediately. I was not given my personal cell phone back, yet they insisted I reveal my wife's password, so I use the office telephone to make this phone call. I was given only time enough to have my wife forcefully disclose her password and then forced to hang up with her.

12.     In the meantime, I was not allowed to speak nor call my attorney, who was but I didn't know at the time waiting patiently outside the pharmacy and was NOT allowed to come inside the pharmacy as the officers REFUSED to let her in the building. An older IT/ DEA agent then demanded the passwords to my personal laptop computer. Once again, I stated this laptop does not contain ANY controlled substance information or patient profiles, again they stated they didn't care, they wanted the password. Once they obtained access to both computers, they took me immediately out of the office as they continued stripping the area, opening every draw, moving papers around and taking items out of my office to confiscate. **The items that they seized were both PERSONAL and business related however, had no relevance to controlled substance information which, I am informed, according to the CIVIL investigation warrant is the primary purpose of the investigatory warrant they possessed.** I watched them take

4

apart my personal laptop piece by piece. I also saw them copy discs of information and place them all in a black box to be confiscated. Every time I asked a question, I was ignored. I had no idea why they were touching items and documents that had nothing to do with information not related to controlled substances. I can only intelligently deduce that the Agents/Police were acting completely outside the scope of their respective authorities to extract information possibly related to the herein CID. As they put my personal laptop back together and began to pack it to take with them, I pleaded that they not remove the laptop as I needed the laptop to conduct business as usual. Only then did they return it. I made the same request for my wife's personal computer; however without hesitation, they seized my wife's PC computer, and stated "we don't care, figure it out."

13.    At this point, I was held against my will for over 3 hours. Thinking that this nightmare was over, I was wrong. Again, at no point was I given the opportunity to talk to my attorney instead I was told to talk to the younger IT individual and give him further access to the servers, I reiterate again that no controlled substance information was on the server. He didn't care and demanded that I give him this information. Then, once he had access to my server, he called the software vendor QS1 again to validate access into the QS1 software program and requested information on how to order and run various program reports. I overheard him speaking to the QS1 software support personnel asking them about accessing and running various reports on ALL patients, both non-controlled and controlled medications of ALL the patients in the software program.

14.    I was then approached by DEA agent Melissa Swanke and she demanded to know where we kept the payroll employee records as well as various prescription records. Again,

I asked the following question, "what does my employee payroll records have to with this civil investigation which was regarding controlled substances?" She had no answer and insisted I give them to her.  The Agents/Police also confiscated those records in, upon information and belief, what must be addressed as an excessive abuse of government authority.

15.    While I detained in the hallway near the server computers DEA agent Swanke instructed the younger IT personnel to disassemble the primary server and take it into their possession. I pleaded with her not to take the primary server and I offered the secondary server instead, but she stated we do not know if this is an identical image, so we are taking the primary server computer. I asked her what I am going to do in order to service all my patients, especially my frail cancer patients who must have their medications. She bluntly stated, "figure it out".

16.    After a physically and mentally exhausting 4 ½ hours, not being offered a rest room break or medical attention, I faintly heard DEA agent M. Swanke tell another DEA agent to bring all their vehicles to the back of the building. I was taken back by this request because they came in through the front door why leave through the back door? Before I had time to process this, I was quickly approached by DEA agent Ken who demanded I give him the keys to open the back door. All I can recall, is seeing over 12 boxes, computers, server computer and various items whisked by me and being carried out the back door. I had no knowledge as to what items were inside those boxes, never having an opportunity to review or copy any of those items or files. Afterward, I discovered they took the **29 patient records that were responsive to the CID in which they never let me see or acknowledge that they were taking them. I know they took them because after they left when I was able to go into my office, I noticed all my**

6

**bankers' boxes located in my office were missing, these boxes had the copies of my files that were responsive to the CID.**

17.     After the various boxes were removed from the premises DEA agent M. Swanke approached me demanding that I sign a 3-page inventory sheet of the items they had confiscated in the presence of her boss, DEA agent Paul. I firmly stated that I was not comfortable signing this document because I had no idea as to the items they had seized from my store. I was completely blind-sided to these items that they took as they purposely did not allow myself nor my attorney to be present while they acted in this grossly unlawful manner. I DID NOT WANT TO SIGN THIS DOCUMENT but was being forced to do so against my own will. I signed this document under duress. I stated.

- **"I have no idea what you took, because you purposely did not allow me to see what you were doing while you conducted this investigation, you hid and isolated me forcefully while you conducted your "civil" investigation"**, Then I signed the inventory document stating: **"I presume these are the items that you have removed and have taken"**

Prior to signing the document, I asked DEA agent Swanke, "why are you doing this, and what do you want from me?" She responded, "If you surrender your DEA license, then we will have another conversation." Flabbergasted at her abuse of authority response, I did not respond.

18.     After over 5 extensive and demanding hours, the Agents/Police finally left Simfarose Pharmacy. My family and my attorney Andrea Wolfson had been waiting outside the entire time they conducted their investigation, and as soon as they left, they quickly rushed in to see me. I was physically exhausted and mentally distraught, still in shock of this traumatic event

7

which just occurred. Moments later, I began to have intense chest pain and my wife Suzette

rushed me to the ER. There I was admitted to the hospital for an emergency hypertensive crisis

sustaining a blood pressure of 198/117 (normal blood pressure range is 120/80), and tachycardia

(high pulse, and heart rate).

19.    Since this life altering traumatic event of December 17, 2021, I have been subject

to hypertensive events, face flushing and rapid heart rate. I was initially placed on one blood

pressure medication after being discharged from the hospital, but it had not sustained a normal

blood pressure after a two-month trial, in which I had to revisit my physician where he has

placed me on two medications to hopefully control my blood pressure. Prior to this event I had a

normal blood pressure without taking any medication. In addition, I am continually traumatized

by driving in the parking lot and remembering that day opening the pharmacy. It has given me

anxiety attacks and heart flutters where I must stop myself and become calm realizing, I have not

done anything wrong, and I should not feel this way. Because of this event I am forced to sell my

business, because my health has been severely compromised as a result of this abusive trauma

and my family is more in important than serving my community. I cannot practice Pharmacy (a

profession I have loved and have dedicated my life to for more than 40 years) when law

enforcement at the direction and with the apparent consent and blessing of the United States

Government and its Officers are allowed to forcefully detain and refuse medical attention to a

person in a "civil" investigation that certainly rise to the level of a 42 USC § 1983 abuse of

authority.

Dated: April 1, 2022
      Ft. Lauderdale, Florida

CHARLES BONANNO

8