**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF FLORIDA**

Case No.: [1:22-mc-20422-JEM]

UNITED STATES OF AMERICA

    Petitioner,

    v.

SUZETTE BONANNO;
CHARLES BONANNO; and
SIMFA ROSE PHARMACEUTICAL
SPECIALTY, INC.,,d/b/a
SIMFAROSE PHARMACY,

    Respondents.

_____/

**DECLARATION OF JOHN TARTAGLIA, ESQ., IN OPPOSITION OF THE UNITED STATES' PETITION FOR SUMMARY ENFORCEMENT OF  CIVIL INVESTIGATION DEMAND 2021-SP-DMR/INT-01**

      Pursuant to 28 U.S.C. § 1746, I, John Tartaglia herby declare under penalty of perjury as follows:

      This Declaration is made in opposition of the United States' Petition for Summary Enforcement of Civil Investigation Demand 2021-SP-DMR/INT-01 (CID) as against the above named Respondents.

      I represented SimfaRose and Mr. and Mrs. Bonanno in connection with the government's Civil Investigative Demand (hereinafter the "CID").  As such, this declaration is based on my personal knowledge.

      I respectfully submit this declaration in connection with the respondents' opposition to the government's petition for enforcement of the CID.  This declaration is specifically submitted to provide the Court with numerous significant and material facts that petitioner has chosen to

completely omit from its papers, including but not limited to, the fact that petitioner admittedly has every single document sought by the CID, and much, much more, because it unlawfully seized these documents during the execution of a limited administrative warrant this Court issued in December 2021.

The CID was purportedly served on the respondents on Friday March 26, 2021 at approximately 4:30 p.m. The CID is directed to two (2) separate pharmacies in two (2) different locations, Pembroke Pines and Lake Worth, and to Charles and Suzette Bonanno, and seeks information and documents for a period that spans more than six (6) years (i.e., "January 1, 2015 to the present").

The CID is not targeted by any means. It contains eleven (11) interrogatories and twelve (12) document requests [demanding "all" documents in broad categories], nearly all of which are overly broad and unduly burdensome on their face. For example, the CID demands production of "[a]ll documents" that relate to, refer to, or are "in any way . . . connected to" various broad and general categories such as "all documents related to prescription drug coverage under any federal or state health care program," "all documents related to the sale or purchase of medications and products" since January 1, 2015 (which ostensibly includes every single prescription the pharmacies filled for the past six (6) years), and a list of every single prescription drug that these pharmacies purchased for the past six (6) plus years. Interrogatory No. 7 & Requests 10 & 12. It also demands "[a]ll documents related to prescribing" by twenty (20) physicians, including without limitation, every prescription order they submitted to the pharmacies and communications with these physicians "about their prescriptions," "[a]ll documents" related to twenty two (22) drugs, and "[a]ll documents" related to thirty (30) patients listed in the annexed Table A, "including but

2

not limited to medical records, prescription data or history, patient profile information (complete prescription histories . . . ) and claims information."

Contrary to plaintiff's claims, respondents have had extensive meetings and conferences concerning the CID. Because the CID was so overly broad, sought documents was duplicate of four (4) prior DOJ subpoenas, sought documents that are already in the government's possession, and the government had specifically targeted Ms. Wolfson in the CID knowing she is SimfaRose's attorney and apparently for this very reason,[1] Ms. Wolfson and I immediately contacted Ms. Schild on March 28 and 29, 2021 in an effort to confer with her regarding limitations to certain demands that would mitigate the burden the CID imposed on respondents.

Ms. Schild responded to Ms. Wolfson's March 28, 2021 email on March 29, 2021 at 4:41 p.m. by stating that she can discuss extending the CID's response deadline but "we will need to address the conflict of interest issue to determine how the case will move forward." The "conflict of interest issue" Ms. Schild was referring to was that she intentionally chose to subpoena Ms. Wolfson's prescription and medical records from her client, SimfaRose.

Ms. Wolfson and I responded by email on March 29, 2021 at 5:27 p.m. and 7:25 p.m. respectively expressing our concerns with this tactic by the government and that we failed to see

---

[1] Ms. Wolfson is one of the patients in Table A to the CID as to whom the government sought a wide array of private and protected health information and documents, including all medical and prescription records, her entire "patient profile," and her complete prescription history. The government, and specifically Ms. Schild, the designated custodian in the CID and the government's counsel herein, knew that Ms. Wolfson is SimfaRose's attorney before it served the CID. Ms. Schild directly dealt with Ms. Wolfson at considerable length shortly before the CID was issued regarding another administrative subpoena the DOJ issued to SimfaRose, a subpoena dated August 17, 2020 issued by the DEA in connection with a civil investigation as per Ms. Schild. Ms. Wolfson questioned whether the DEA is legally authorized to seek documents sought by this subpoena that did not relate to controlled substances, which was issued under the Controlled Substances Act 21 U.S.C. § 801, *et seq.* Petitioner's counsel responded by issuing the CID, which notably seeks the very same documents the government sought pursuant to the DEA subpoena and much, much more.

any conflict of interest issue. In my email, I advised Ms. Schild that Ms. Wolfson has cancer and other serious illnesses and health conditions and received her pain medication, cancer medications, and other prescription drugs from SimfaRose pursuant to her doctors' orders. In the response email she sent on March 29, 2021, Ms. Schild acknowledged having accessed and reviewed information available to her that tends to independently verify these facts, specifically, the Prescription Drug Monitoring Program (PDMP) and Medicare data.

Ms. Wolfson was understandably upset that the government was seeking her private medical information knowing that she is SimfaRose's attorney and using this intrusion to bootstrap a conflict of interest claim and disqualify her from representing SimfaRose in this matter. During our conference call on March 30, 2021, Ms. Wolfson made this clear to Ms. Schild and asked her why she was doing this to her. Ms. Schild advised that Ms. Wolfson was included in the CID because, according to PDMP and Medicare claims data, she takes a "dangerous" combination of drugs. Ms. Wolfson reiterated, in painful detail, that she is suffering from a very painful form of cancer, the drugs her doctors prescribe are medically necessary, and that she actually received, and unfortunately needs, them.

During our conference on March 30, 2021, I told Ms. Schild that the government does not need Ms. Wolfson's records to complete a thorough investigation and she admitted as much by stating that Ms. Wolfson would "likely make the first cut" in scaling back Table A to a "probe sample" or more manageable, prioritized list of patients as respondents' counsel requested in their March 29, 2021 letter. As such, she agreed that the best way to proceed at this point with respect to the alleged conflict of interest would be for her to consult with her supervisor regarding respondents' request to narrow Table A to a reasonable number of patients, whether Ms. Wolfson should be included within this prioritized subset patient list the government wished to focus on at

4

the outset, that she would provide us with such a list, and Request Number 2 would be limited accordingly, at least initially.

This agreement is memorialized in the letter I sent to Ms. Schild on March 31, 2021 confirming our telephone conversation of March 30, 2021.   In her response to this letter, Ms. Schild further confirms this agreement.

Ms. Schild, however, reneged on this agreement, refused to narrow the scope of Request Number 2 at all, and suddenly claimed that Ms. Wolfson's records were now the government's top priority over all other CID demands.

Petitioner's counsel's stated reasons for reversing course was deeply concerning. Petitioner's counsel, without any evidentiary or factual basis whatsoever to support these wild accusations and speculative assertions, claimed that there is a potential conflict of interest here because: (1) Ms. Wolfson, a fellow member of the bar in good standing and officer of the Court for forty one (41) years, is a criminal and complicit with SimfaRose in a scheme to fraudulently bill for medically unnecessary drugs prescribed to her or (2) SimfaRose "did not fill her prescriptions or fraudulently billed for them" or she is otherwise "a victim of improper dispensing by SimfaRose" thus making her a potential fact witness for the government against SimfaRose.

The government demanded that respondents and their counsel produce sufficient evidence within seven (7) days to refute its bare conclusory allegations of a potential conflict of interest from Ms. Wolfson's continued representation of SimfaRose (*i.e.*, evidence demonstrating that Ms. Wolfson was not involved in fraud or other wrongful conduct with SimfaRose and not a fact witness against it).   In doing so, petitioner's counsel misused the CID and effectively transformed it into a means of requiring respondents and their attorney to rebut the government's unsupported

speculation and prove to it at the outset they did not violate the FCA rather than using the CID for its proper and statutorily authorized purpose.

Although respondents and their counsel strenuously disagreed with the government's position and Ms. Wolfson was angered and hurt by it, they provided the government with all of the documents it demanded to assess its tenuous conflict of interest claims prior to the agreed upon deadline of May 3, 2021 in a good faith effort to resolve this matter and move the government's investigation toward conclusion. These documents include voluminous medical and other records concerning Ms. Wolfson and prescriptions dispensed to her over many years (including several years before she became a Medicare beneficiary in 2019) in full compliance with CID Request Number 2 as it pertains to Ms. Wolfson.

Respondents also provided the government with additional documents it did not request to to assist it with its evaluation so that they can resume meet and confer discussions with petitioner's counsel on the CID's substantive matters as per her direction. Respondents provided petitioner's counsel with an affidavit from Ms. Wolfson's doctor who prescribed the medications that purportedly caused her to demand Ms. Wolfson's records in the CID attesting to the legitimacy and medical necessity of these prescriptions and his physician-patient relationship with Ms. Wolfson for many years and a letter from SimfaRose confirming that it actually dispensed the prescriptions to her pursuant to valid orders from her doctors, dispelling the baseless accusations that prompted the government's conflict of interest investigation, and documentation demonstrating collection and Ms. Wolfson's payment of the co-pays for the prescriptions dispensed to her, which further belies petitioner's counsel's speculative assertions that she was "in on" a fraudulent billing or prescribing scheme with SimfaRose or did not actually receive the prescriptions.

Ms. Wolfson also provided petitioner's counsel with a letter confirming these facts and describing, in painstaking detail, the numerous significant health issues and resulting excruciating pain she has been suffering from since the age of 27, including the fragmentation of the disc at the L5/S1 level of her spine into three (3) pieces that pressed on her sciatic nerve root and paralyzed her from the waist down, the fragmentations of the discs at the L4/L5 level of her lumbar spine, the permanent spinal nerve damage that has plagued her for many years, the multiple spinal surgeries and related procedures she has undergone, and facts concerning her diagnosis with multiple myeloma, a rare and extremely painful form of bone cancer which greatly exacerbates her already debilitating spinal nerve pain among other things, in 2016 which she has been suffering from ever since.

Moreover, respondents have engaged in numerous conferences concerning the scope of the Interrogatories and Documents Demands.  In preparation for our initial telephonic meet and confer, I sent petitioner's counsel an email and a letter on March 29, 2021 requesting information about the government's investigation, setting forth SimfaRose's objections and concerns with respect to the government's authority to issue the CID, and its motivation for doing so, and the fact that the CID is duplicitous of three (3) prior DOJ subpoenas SimfaRose responded to in connection with its extensive investigation of identical claims and a related *qui tam* action that a relator filed in 2014 against SimfaRose and others under the FCA.  On March 30, 2021, petioner's counsel and I engaged in a two hour conversation discussing the above matters and other points in further detail.

During this telephone conference, I also reiterated to petitioner's counsel that SimfaRose's records are organized and maintained by patient, not by drug or provider/prescriber, which is further grounds for narrowing the scope of CID demands which categorically sought "all

documents" relating to specific drugs and prescribers to avoid and/or limit the undue burden imposed by these overly broad and expansive requests.

In her April 5, 2021 letter regarding the potential conflict of interest from Ms. Wolfson's continued representation of SimfaRose, petitioner's counsel told respondents "not to proceed ahead on any substantive matters" in the CID "until the potential conflict of interest matter is resolved" by respondents production of evidence sufficient for the government to make a decision on this matter. On April 6, 2021, I emailed petitioner's counsel to advise her of the documents respondents intended to provide in order for the government to assess whether Ms. Wolfson has a conflict of interest and asked her to extend respondents' deadline to provide these documents to May 3, 2021, which she agreed to.  In light of this and pursuant to the government's direction to hold off on substantive matters pending its determination of the potential conflict issue and respondents were still waiting to hear back from petitioner's counsel on several open items with respect to the scope of various interrogatories and document requests, I also requested an extension of time to respond to the CID until at least June 18, 2021 to allow time to resolve these matters.

On April 6, 2021, Petitioner's counsel agreed to this extension and advised that she would be providing a separate letter regarding the CID shortly and would also be addressing our March 30, 2021 telephonic meet and confer discussion and my letter dated March 31, 2021 confirming this discussion.

Petitioner's counsel provided this letter on April 13, 2021.  In this letter, petitioner's counsel did not dispute the material facts confirmed in respondents' sent respondents' counsel's letter of March 31, 2021 memorializing the details of their March 30, 2021 meet and confer discussion and agreed that it fairly summarizes our discussion of the open issues concerning the appropriate scope of specific CID demands.  Petitioner's counsel stated that she will get back to

respondents' counsel with the clarification and prioritization they requested as to document Requests 2, 3, 7, 11, and 12 and Interrogatory 7, advised that she would provide clarification of Request 4, and confirmed her agreement to limit Request 8 to audit notices and documents relating to determinations made on pharmacy audits conducted. Petitioner's counsel also claimed that the petitioner, the United States government through the United States Attorney's Office, cannot obtain the documents that SimfaRose previously provided it in response to subpoenas it issued in connection with the *qui tam* action pending in the United States District Court for the District of New Jersey and it therefore expects SimfaRose to reproduce to it documents that are already in its possession, custody and control and maintained within its own files.

On May 28, 2021, petitioner's counsel directed respondents to "hold off on responding to document request number 3" because the government will "not need this information for now." In an apparent effort to malign respondents and make petitioner appear eminently fair and reasonable, petitioner's counsel, however, makes it a point to represent in her papers that the government agreed "not to request this information" because it wanted "to accommodate the Respondents." She also fails to point out that this Request is so absurdly overbroad that withdrawing is only proper and reasonable and not some noble or meaningful gesture on the government's part.

On May 28, 2021, petitioner's counsel also finally was able to respond confirm that respondents basic request to narrow the overly broad scope of Interrogatory 7 to prescription drug products, as opposed to all products purchased or sold by SimfaRose.

On June 17, 2021 at 4:28 p.m., petitioner's counsel finally, albeit tersely and in conclusory fashion, responded to our requests, made nearly three (3) months ago, to reasonably limit certain

overly broad and unduly burdensome document requests by advising that she will not agree to narrow or prioritize Requests 2, 7, 11, or 12.

On July 12, 2021, the deadline petitioner set for responding to certain demands, I served respondents' objections and responses to the CID by mail along with at least approximately 500 pages of documents responsive to various Interrogatories and Requests, including various contracts with pharmaceutical drug manufacturers and distributors, complete records for eight (8) of the patients in Table A (Request No. 2), numerous policies and procedures and compliance materials responsive to the CID, a personnel list, distributor invoices/prescription drug purchasing records, and audit reports and notices in response to the CID. I provided petitioner's counsel with a courtesy copy of respondents' objections and responses via email on July 12, 2021 and advised her that these responses along with the documents produced with them are also being mailed to her. On July 12, 2021, I also provided some of the documents that were produced with these responses to petitioner's counsel via email.

On July 19 and 20, 2021, respondents produced hundreds of pages of additional documents in response to the CID, including records for additional patients listed in Table A.

On July 23, 2021, I produced additional documents responsive to Request No. 2 via email to petitioner's counsel.

On July 27, 2021, I produced various emails to petitioner's counsel responsive to the CID.

On July 29, 2021, I produced nearly 100 pages of additional documents to petitioner's counsel via email, including additional documents related to several audits in response to the CID and documents for additional patients in Table A.

On August 11 and 12, 2021, I produced hundreds of pages of additional documents responsive to Request 2 in electronic format via mail to petitioner's counsel with cover letters advising as to the particular CID demand the documents were responsive to the CID.

On August 26, 20211, SimfaRose provided me with additional documents fully responsive to Request No. 2 with respect to patient Table A. I recently discovered that I inadvertently failed to produce these to petitioner's counsel and immediately forwarded them to counsel of record for respondents herein to Bates stamp and produce to petitioner. I also immediately advised petitioner's counsel of this and asked her whether she would like me to produce these documents to her electronically in the interim.

I also emailed petitioner's counsel additional documents responsive to the CID, including documents relating to a 2017 audit conducted by the State of Florida Medicaid and CMS (Center for Medicare/Medicaid Services) and this agency's agreement to withdraw its findings as unsupported and meritless based on the evidence SimfaRose provided which demonstrated that there were no discrepancies between the amount of drugs purchased and dispensed by the pharmacy. In my email, I also provided petitioner's counsel with a link to the website where documents related to this audit were published on the internet and made publicly available.

Additionally, SimfaRose produced three (3) large boxes filled with hundreds of documents to petitioner's counsel, including a box weighing five (5) pounds that was shipped to petitioner's counsel on August 12, 2021 and received by her on August 17, 2021.

Even though it was not obligated to do so, SimfaRose also voluntarily and without demand supplemented its responses even further in light of subsequent events by providing documents that came into its possession after providing its responses such as documents relating to a DEA inventory audit of the pharmacy in Lake Worth which did not reveal any violations that were

produced to petitioner's counsel via email on July 28, 2021.  In this email, I advised petitioner's counsel that these documents were produced in response to Interrogatory 11 and Request Number 8.

SimfaRose is also in the process of supplementing its responses even further.  In a good faith effort to accommodate the government's demands for more emails, I extensively combed through and reviewed the information contained in the email accounts provided for several employees to identify and copy emails that may potentially be responsive using search terms that correspond with the CID's demands, including the specific drugs, prescribers, and other material and salient language and terms used in the CID's document requests and interrogatories.  I informed petitioner's counsel of these efforts and advised her that SimfaRose will be further supplementing its productions with email documents.  I am in the process of transmitting voluminous email records to respondents' counsel of record in this matter for them to Bates stamp and produce to the government.  I am also transmitting an extensive amount of additional documents that are or may potentially be responsive to various document requests in the CID to respondents' counsel in this matter for production to the government.

The government continues to take issue with the fact that the documents SimfaRose has produced consist mostly of prescription records as compared to other types of documents.  Respectfully, I still fail to see a plausible, or even a commonsense basis, for this argument let alone how it even remotely tends to demonstrate that SimfaRose's responses were deficient.  That SimfaRose, _**a pharmacy**_ whose entire business is filling and dispensing prescriptions, has produced more prescription documents than other categories of documents can hardly be considered unusual or something the government can fault it for both as a general proposition or based upon the undisputed facts in this case. Eight (8) of the twelve (12) document requests in the

12

CID seek these very documents, including Request 2 which seeks all prescriptions and related documents for thirty (30) patients for a period of nearly seven (7) years. As I advised petitioner's counsel during our first meet and confer session nearly one (1) year ago, these and many other patients suffer from cancer and other serious medical conditions and their doctors submit all or substantially all of their orders for the patients' various prescription drugs and drug products, including chemotherapy drugs and sterile compounds and infusions, to SimfaRose.

Petitioner's counsel never conferred with me or Ms. Wolfson regarding the alleged deficiencies raised in the petition with respect to Requests 4, 5, and 6 and Interrogatories 1-6 and 9-11 or made any good faith effort to resolve these issues by agreement before filing the petition. She notably does not even attempt to contend that she did in the purported certification she provided under Local Rule 7.1(a)(3). Instead, she merely states she sent an email threatening litigation. Had she done complied with the Rule, we would have easily resolved the alleged issues raised in the petition as to these demands.

In response to numerous valid objections respondents raised as to certain CID demands and whether the government was even authorized to issue the CID in the first place, and rather than work with respondents' counsel in good faith to resolve these matters by agreement, petitioner's counsel chose to take what she wanted, and much, much more, by force under the guise of an administrative inspection warrant that requires the most minimal of showings to obtain.

Early in the morning on December 17, 2021, petitioner's counsel in concert with the DEA and a small army of agents and local law enforcement officers, rushed Mr. as he was opening up, stormed into the pharmacy, disconnected the security cameras, took Mr. Bonanno into a room and kept him confined there against his will for approximately eight (8) hours, refused to allow him to speak with Ms. Wolfson, who was immediately rushed to the pharmacy and stayed there

throughout, and refused Mr. Bonanno's request for medical treatment while the ransacked the pharmacy under the guise of a DEA administrative inspection warrant that this Court issued pursuant to 21 U.S.C. § 880 upon Ms. Schild's application. The statute authorizes the issuance of such an inspection warrant upon an exceedingly minimal showing by the government – an affidavit of a DEA agent that the pharmacy has not been inspected in the past two (2) years. Ms. Schild prepared an affidavit for DEA Diversion Investigator Melissa Szwanke stating just this and only this and submitted it to the Court along with a warrant for it to sign. Ms. Szwanke confirmed these facts to me during my telephone conversation with her.

In this inspection warrant, this Court clearly and expressly limited the DEA's authority to inspect and copy to only those documents required to be made and kept under the provisions of the Controlled Substances Act for the purposes of verifying that these documents and controlled substances are properly kept and maintained. This Court also strictly limited the government's seizure authority only to physical inventories of controlled substances and prescriptions and records that relate to the dispensation of controlled substances.

The government completely ignored this Court's clear limitations and vastly exceeded the authority conferred to it under this inspection warrant. This is demonstrated by the seizure of Mr. Bonanno's personal laptop computer (even though he told DEA Agents that it does not contain any information concerning controlled substances), SimfaRoses computer server systems, all of the data on Mrs. Bonanno's computer, and all of the data stored in SimfaRose's pharmacy software system (QS/1), among many, many other things. The data contained within the computer, servers, and pharmacy software system alone vastly exceeds the scope of the seizure authority by miles and contain every single document sought by the CID and much, much more, including all email

records, all prescription records for both controlled substances and noncontrolled substances, and documents protected by the attorney client and work product privileges.

It appears that the DEA went out of its way to seize the very documents sought by the CID even though these documents have at the absolute best little to nothing to do with controlled substances or the documents this Court authorized it to seize. In fact, the DEA unlawfully seized employee payroll records/ADP system among the many items confiscated without authority for same. During a subsequent telephone conversation with petitioner's counsel, Diversion Investigator Szwanke attempted to justify seizing these materials

Further, the instant CID is duplicative of three (3) administrative subpoenas previously issued by the Office of the United States Attorney. In fact, the Chief of the Health Care and Government Fraud Unit of the United States Attorney's Office for the District of New Jersey, issued three (3) administrative subpoenas to SimfaRose on June 23, 2016, March 15, 2017, and September 7, 2017 pursuant to 18 U.S.C. § 3486. These subpoenas were focused on Sancuso, an anti-emetic drug that treats chemotherapy induced nausea and vomiting, and its manufacturer and U.S. distributor, ProStrakan, Inc., which maintains its U.S. headquarters in New Jersey. The subpoenas demanded production of the same documents sought by the CID. Specifically, they sought, among many other things:

- "All records relating to the filling of prescriptions for Sancuso, including but not limited to, prescriptions, prescription forms and drafts, shipping records, billing records, communications relating to Sancuso prescriptions including communications with physicians, patients, and insurance companies, Medicare or Medicaid, all communications relating to prescription forms and drafts, all policies and procedures related to the filling of

prescriptions for Sancuso," and "All communications with Prostraken [sic]," the manufacturer and distributor of Sancuso;

- All agreements with Prostrakan, Inc. and Kyowa Kirin, the manufacturer and distributor of Sancuso, and Galena BioPharma,;

- All agreements between SimfaRose and any doctor or doctor's office relating to Sancuso and all communications with patients and doctors regarding Sancuso prescriptions;

- Documents relating to purchases of Sancuso, including all invoices, and all documents relating to any and all remuneration, reimbursements or compensation received from the manufacturer and distributor of Sancuso); and

- All documents related to Sancuso payments, including, among many other things, billing records and "all patient billing records," copayments charged to and received from patients, claims submitted to private insurance companies and health care benefit programs including Medicare and Medicaid.

Except for the September 7, 2017, subpoena, the New Jersey subpoenas did not contain any instructions or temporal limitations. The "Relevant Time Period" for the document requests in the September 7, 2017, subpoena was "January 1, 2012, through the present." In response to my meet and confer efforts seeking to mitigate the burden presented by the subpoenas, the U.S. Attorney's Office immediately agreed to narrow the broad scope of the June 23, 2016 subpoena and document request numbers 1-4 and 8 of the September 7, 2017 subpoena respectively to seeking responsive documents for a priority list of physicians and seventy seven (77) patients that the U.S. Attorney's Office provided me.[2]  Petitioner's counsel herein never agreed to any such

---

[2] In doing so, the U.S. Attorney's Office for the District of New Jersey reserved its right to seek additional documents in the future, including documents for additional patients and doctors.

limitations and the CID is much broader than the subpoenas issued by the U.S. Attorney's Office on June 23, 2016 and September 7, 2017. As such, every single document SimfaRose produced to the U.S. Attorney's Office in response to the New Jersey subpoenas is, by definition, responsive to the duplicative demands in the CID.

SimfaRose fully complied with the New Jersey subpoenas, produced voluminous documents to the United States Attorney's Office/DOJ in response to them and numerous boxes to the U.S. Attorney filled with responsive materials. The documents SimfaRose produced in response to the New Jersey subpoenas include a voluminous amount of Sancuso prescriptions. In connection with its investigation, the United States Attorney's Office for the District of New Jersey also served numerous physicians, including one the of the physicians listed in CID Request 7, with several rounds of subpoenas seeking, among other things, documents related to Sancuso prescriptions submitted to SimfaRose.

In addition to fully complying with the New Jersey subpoenas, SimfaRose and your Declarant also voluntarily and fully cooperated with the U.S. Attorney's Office's investigation by responding to its each and every one of its numerous informal requests for additional information and documents beyond what was sought by the subpoenas. This includes submitting numerous lengthy letters containing full and complete written responses to the U.S. Attorney's many follow-up requests, made over the lengthy period of time after it received and reviewed the documents SimfaRose produced, for an extensive amount of additional information and documents it sought based upon the documents produced. After completing a comprehensive and thorough investigation, the U.S. Attorney's Office determined that there was no evidence that SimfaRose engaged in any unlawful conduct and closed its investigation into SimfaRose.

In broadly seeking "All documents related to Sancuso," CID Request number 11 duplicates each and every one of the three (3) New Jery subpoenas in their entirety. In fact, this Request repeats the document requests in the June 23, 2016 subpoena *almost verbatim*. As stated above, SimfaRose produced, and the government already has, voluminous documents responsive to CID Request number 11 to the U.S. Attorney's Office in response to the New Jersey subpoenas.

Various other CID demands seek the very same information and documents that were sought by the New Jersey subpoenas and are already in the government's possession, custody, or control as a result of SimfaRose's responses to these subpoenas. CID Requests 4 and 5 and Interrogatory 9 duplicate the March 15, 2017 subpoena in its entirety and are duplicative of document request number 6 in the September 7, 2017 subpoena by seeking information and "All documents related to any remuneration offered/provided to [respondents] by" and "All documents relating to any agreements" between respondents and "any prescription drug manufacturer, distributor, supplier, or wholesaler . . . medical practice, physician/group, or healthcare professional."

CID Request 7 (and Request 2) is partially duplicative of the June 23, 2016 subpoena and document request number 7 in the September 7, 2017 subpoena to the extent it seeks "all documents and communications related to prescribing" by Dr. Luis E. Mendez, one of the physicians on the priority list of physicians that the U.S. Attorney's Office provided to limit the broad scope of the New Jersey subpoenas. CID Request number 8 is so broad that it seeks production of ever document SimfaRose previously produced to the U.S. Attorney's Office/DOJ in response to the New Jersey subpoenas. Similarly, in CID Interrogatory number 11, the U.S. Attorney's Office seeks information already in its possession by asking the respondents to tell it about the existence and details of its own prior investigation into Sancuso. CID Request 12 is

18

duplicative of the New Jersey subpoenas in that it seeks production of "All documents related to the sale or purchase" of Sancuso, including the documents that SimfaRose already produced to the U.S. Attorney's Office in response to the New Jersey subpoenas. CID Interrogatory 4 also duplicates document request number 11 in the September 7, 2017 subpoena.

That the CID seeks to revisit the same allegations that were thoroughly investigated by the United States Attorney's Office for the District of New Jersey is evident from the face of the requests in the New Jersey subpoenas and the requests and interrogatories in the CID. Additionally, petitioner's counsel has repeatedly argued that the CID's overly broad demands, including its request for "All documents related to Sancuso," requires respondents reproduce to her office the very same documents SimfaRose already produced to the United States Attorney's Office in response to the New Jersey subpoenas despite being provided with the case law, which she notably still does not address in her petition, that this is improper. Petitioner's counsel also never provided any information to explain or support her conclusory assertion that her investigation of Sancuso is "completely separate" from the United States Attorney's Office for the District of New Jersey's investigation. Despite respondents' counsel's extensive efforts to meet and confer with her to resolve the duplicative CID demands through reasonable limitations, petitioner's counsel never agreed or even offered to revise any of these demands in light of any alleged differences between her purported investigation or to limit these demands to any "separate" matters she claims to be investigating.

Jacob T. Elberg, the Chief of the Health Care and Government Fraud Unit of the U.S. Attorney's Office for the District of New Jersey, issued the New Jersey subpoenas to SimfaRose as part of the government's investigation of Sancuso and "federal health care offenses" as defined

in 18 U.S.C. § 24(a), which includes the very same conduct and alleged FCA violations that the government is investigating herein pursuant to the subject CID

   During the course of my numerous conversations and correspondence with Mr. Elberg and Nicole F. Mastropieri, the Assistant U.S. Attorney with the Healthcare Fraud Unit that was assigned to handling FCA investigations and lawsuits, concerning the New Jersey subpoenas, they provided me with information demonstrating that their investigation of SimfaRose and Sancuso overlaps with the government's FCA investigation at issue in this proceeding. They advised that the government was investigating fraud and other criminal and civil misconduct relating to Sancuso including whether SimfaRose submitted false claims for payment to government healthcare programs for Sancuso prescriptions, whether Sancuso prescriptions dispensed by SimfaRose were legitimate, valid, medically necessary, and actually received the patients, whether SimfaRose billed for Sancsuo prescriptions that were not dispensed, and whether refills of Sancuso prescriptions were automatically filled. Mr. Elberg and Ms. Mastropieri also advised me that SimfaRose is a subject of a criminal investigation that the U.S. Attorney's Office was conducting and that involved potential violations of various criminal healthcare fraud statutes and potential civil liability under the FCA, which is why Ms. Mastropieri was involved in this investigation.

   Mr. Elberg and Ms. Mastropieri refused to advise whether the New Jersey subpoenas were related to a *qui tam* action under the FCA or whether any such action existed when I asked them these specific questions. I discovered that such an action did in fact exist on or around July of 2018 from a basic internet search which quickly uncovered the news article concerning same.

   This case was filed on behalf of the United States by a relator under the pseudonym "Jane Doe" in the United States District Court for the District of New Jersey on September 19, 2014 (Case No. 3:14-cv-05865-FLW-DEA) against ProStrakan, Inc., the manufacturer and U.S.

distributor of Sancuso, and its Japanese parent corporation, Kyowa Hakko Kirin Co., Ltd., SimfaRose Pharmacy, Charles Bonanno, Rph., Rose Bonanno,[3] and Galena Biopharma, Inc., the distributor of Abstral, a sublingual, fentanyl-based rapid onset opioid drug designed to treat breakthrough cancer pain in patients already receiving opioids, for allegedly submitting fraudulent claims to the government in violation of FCA section 3729.

Here, the government is not acting in good faith by apparently relying on an incredible witness. The government's investigation and the CID are based solely on some unspecified algorithm or statistical analysis of PDMP and Medicare claims data and false statements made by Loralei Parchejo, a former SimfaRose employee that is a defendant in pending civil litigation SimfaRose filed as a result of her intentional breach of a non-competition agreement, is subject to a temporary injunction entered in this case preventing her from working for SimfaRose's competitor, and was admonished by the Court for lying under oath about material facts (i.e., stealing SimfaRoses property and giving it to her new employer) during an evidentiary hearing.

Sometime in 2021, SimfaRose's parent company, SCSC Enterprises, LLC, commenced a civil action in against five (5) former employees who recently quit for knowingly and intentionally breaching their non-competitions agreements by immediately going to work for competing specialty pharmacy, who was also named as a defendant, and stealing SimfaRose's patients and referral sources for their new employer. A temporary injunction was entered against these defendants on June 2, 2021, enjoining them from working for their new employer and from

---

[3] Rose Bonanno is Charles Bonanno's mother who had been deceased for years when the complaint was filed and never had any involvement with SimfaRose. The plaintiff clearly named Rose Bonanno as a defendant in this action by mistake and intended to name respondent Suzette Bonanno, Mr. Bonanno's wife who is employed at the pharmacy, as the defendant instead. (alleging that "Mr. Bonanno owns SimfaRose. His wife, Mrs. Bonanno, is a SimfaRose employee with no known medical training.")

committing any further breaches of their non-competition agreements. This injunction prompted the government to seek out the defendants, and only the defendants, for interviews in the hopes they might give legs to a case they desperately wanted to make and the defendants were more than happy to become bedfellows with them because they were in desperate need of a defense that could lift the injunction.

On June 7, 2021, the defendants filed a motion to dissolve the injunction which relied primarily, if not exclusively, on an unclean hands defense. They attempted to establish this based on the CID and the government's FCA investigation. Defendants Loralei Parchejo and Elaine Cairns also made false allegations of specific misconduct in an attempt to support their unclean hands defenses. Parchejo alleged that SimfaRose was "shorting" prescriptions dispensed for particular drugs (two of which are listed in CID) and that she personally shorted prescriptions for one of these drugs pursuant to SimfaRose's direction. Cairns alleged that Mr. Bonanno asked her to obtain a copy of a previously filled prescription from the prescriber's officer because the pharmacy had misplaced the copy of the prescription that was transmitted to it.

Shortly thereafter, upon information and belief, on June 17, 2021, the Agent Mejia went to defendant McNeal's residence while she was not present and left his card with a message for McNeal to call him. When McNeal called Mejia the next day, he and petitioner's counsel, Ms. Pinheiro Schild, interviewed her on the topics of the CID, including prescriptions for Sancuso, opioids, Endari, and Trelstar and prescription billing and claims for payment. Upon information and belief, McNeal asked petitioner's counsel how she got her name and petitioner's counsel replied from the injunction that was entered in SimfaRose's civil lawsuit against her. She also advised that she knows everyone who works and who used to work for SimfaRose and that she prefers to speak with former employees. She also asked McNeal if she knew defendants

22

Encarnacion, Cairns, and Parchejo.[4]   During this interview, Mejia asked McNeal if she had codefendant Loralei Parchejo's telephone number because the number the government had for her did not work.  McNeal gave Mejia and petitioner's counsel Parchejo's telephone number and they contacted her shortly thereafter and she put them in contact with Gary A. Isaacs, the attorney representing her and her new employer in SimfaRose's lawsuit against her.

Parchejo testified on direct examination at an evidentiary hearing on defendants' motion that she and Isaacs met with investigators (including the U.S. Attorney, the DEA, OIG, and another representative of the DOJ) at the U.S. Attorney's Office in Miami during the week of July 5, 2021 and answered questions about SimfaRose and Mr. and Mrs. Bonanno for six and a half (6.5) hours. Parchejo also testified about the fraud allegations she discussed with investigators during this meeting, including her claims of shorting prescriptions for drugs that are the subject of the CID (Endari).   During a subsequent hearing, defendant Leslie Encarnacion testified on redirect examination that Elaine Cairns, her codefendant and sister-in-law, told her that she arranged for them to meet with investigators in the next week or two (2) regarding the subject investigation of SimfaRose and Parchejo's allegations of shorting Endari prescriptions.

Defendants' counsel heavily relied on this testimony, specifically defendants' contact and meetings with government investigators, in both in his arguments at the hearings and in his motion

---

[4] Petitioner's counsel notably did not inquire or attempt to contact Margie Brett, a former employee that was also named as a defendant in SimfaRose's civil suit, or any other former employee for that matter.  It would appear that she did not want to speak with Ms. Brett because, unlike the other defendants she sought out, Ms. Brett does not have an axe to grind against SimfaRose and is no longer a party to this case.  SimfaRose never served Ms. Brett with the summons and complaint and voluntarily dismissed its claims against her because it learned shortly after filing this case that she was not in fact employed by the competing pharmacy as initially suspected.  I advised petitioner's counsel that the government's selective approach to "fact finding," which is inconsistent with its own policies and preferences, raises serious concerns as to the whether the government is conducting its investigation in good faith and for a proper purpose.

papers as alleged evidence establishing defendants' unclean hands defense to the enforcement of the non-competition agreements through the injunction. He used the CID for the same purpose, as a basis to sling mud at SimfaRose and Mr. and Mrs. Bonanno throughout the proceedings, and as a purported reason why his clients terminated their employment at SimfaRose.

During the 2021 hearing, Parchejo admitted to knowingly and intentionally lying under oath during the evidentiary hearing to avoid the negative consequences that testifying truthfully would have for her in this case and she freely conceded that she only confessed to lying and admitted to stealing SCSC's valuable property because she discovered that plaintiff's forensic IT expert caught her in her perjuring herself.

The Court denied the defendants' motion to dissolve the temporary injunction. The Court found that there is insufficient evidence to support defendants' unclean hands claims and stated that it "remains disturbed" by Parchejo's "mendacity" (*i.e.*, lying to the Court under oath). The Court also found that there was no evidence to corroborate Parchejo's allegations of prescription shorting, which the government claims to be investigating pursuant to the CID, and noted once again that Parchejo admittedly "lied about a material fact" and only admitted to the Court that she had lied after she learned that SCSC/SimfaRose had proof that she lied.

Petitioner's counsel is aware of these facts. She ordered the hearing transcripts and I informed her in a July 27, 2021 email that the defendants were testifying about the details of her interviews with them and her investigation of SimfaRose to support their defense. Notwithstanding this, petitioner's counsel claims in the petition, in conclusory fashion and without providing any factual support, that the Court should enforce the CID because it is reasonably relevant to her investigation by seeking documents and information she has "reason to believe"

are in respondents possession and would show that respondents "billed Medicare and other federal health care programs for medications they did not dispense."

Dated: April 3, 2022
        Portchester, New York

JOHN TARTAGLIA, ESQ