# EXHIBIT B

# UNITED STATES OF AMERICA
## DEPARTMENT OF JUSTICE
### 2016R00359/1
### SUBPOENA DUCES TECUM

To:     **SimfaRose Pharmaceutical Specialty, Inc.**
**ATTN: Dawn Hughes, Administrative Assistant**
**10016 Pines Boulevard**
**Pembroke Pines, FL, 33024**
**(954) 435-7200**

*YOU ARE HEREBY COMMANDED TO APPEAR BEFORE* Jacob T. Elberg       ,
*an official of the U.S. Department of Justice, and you are hereby required to bring with you and produce the following:*

**Please see attached.**

*which are necessary in the performance of the responsibility of the U.S. Department of Justice to investigate Federal health care offenses as defined in 18 U.S.C. § 24(a).*

*Please contact Assistant United States Attorney* Jacob T. Elberg   *at*   (973) 645-3987
*if you have any questions regarding this Subpoena Duces Tecum.*

### PLACE AND TIME FOR APPEARANCE:

U.S. Attorney's Office, 970 Broad Street, Newark, New Jersey 07102
on the 14th day of July      , 2016   at 9:00   o'clock  A.M.

Failure to comply with the requirements of this subpoena will render you liable to proceedings in the district court of the United States to enforce obedience to the requirements of this subpoena, and to punish default or disobedience.

Issued under authority of Sec. 248 of the Health Insurance
Portability & Accountability Act of 1996, Public Law No. 104-91
(18 U.S.C. § 3486)

IN TESTIMONY WHEREOF



*Jacob T. Elberg, Chief of the Health Care & Government Fraud Unit, U.S. Attorney's Office, District of NJ, the undersigned official of the U.S. DEPARTMENT OF JUSTICE, has hereunto set his hand this*

23rd   day of June      , 2016   .

_____
(SIGNATURE)

## Documents to be Produced

1. All records relating to the filling of prescriptions of Sancuso, including but not limited to:
   a. Prescriptions;
   b. Shipping records;
   c. Billing records;
   d. Records of communications relating to such prescriptions, including but not limited to communications with physicians, patients, insurance companies, Medicare, or Medicaid;
   e. Prescription forms, including drafts
   f. All communications relating to prescription forms, including drafts
   g. All policies and procedures relating to prescriptions of Sancuso.

2. All communications with ProStraken

FORM CRM-180                                          MAR.97

## RETURN OF SERVICE

I, being a person over 18 years of age, hereby
certify that a copy of this subpoena was duly
served on the person named herein by means of

&ndash;
&ndash;

1. Personal delivery to an individual, to wit:

_____
*(Name)*

_____
*(Title)*

_____
*(Address)*

2. Personal delivery to an address, to wit:

_____
*(Description of premises)*

_____
*(Address)*

_____

_____

3. registered or certified mailing to:

_____
*(Name)*

_____
*(Address)*

_____
   ( ) a.m.
at ____( ) p.m. on _____

_____
*(Signature)*

_____
*(Title)*

*UNITED STATES OF AMERICA*
*DEPARTMENT OF JUSTICE*

*SUBPOENA DUCES TECUM*

Upon contumacy or refusal to obey, this
subpoena shall be enforceable by order of
the appropriate United States District Court.

# UNITED STATES OF AMERICA

## DEPARTMENT OF JUSTICE

### 2016V02000/1

## SUBPOENA DUCES TECUM

**To:**   **SimfaRose Pharmaceutical Specialities**
**10016 Pines Boulevard**
**Pembroke Pines, FL 33024**

*YOU ARE HEREBY COMMANDED TO APPEAR BEFORE   Jacob T. Elberg ,*
*an official of the U.S. Department of Justice, and you are hereby, required to bring with you and*
*produce the following:*

### *Please see Attachment.*

*which are necessary in the performance of the responsibility of the U.S. Department of Justice to*
*investigate Federal health care offenses as defined in 18 U.S.C. §24 (a).*

*Please contact Assistant United States Attorney Jacob T. Elberg at (973) 645-3987 if you have any*
*questions regarding this Subpoena Duces Tecum.*

**PLACE AND TIME FOR APPEARANCE:**

At     U.S. Attorney's Office, 970 Broad Street, Suite 700, Newark, New Jersey, 07102   on
the    15th     day of    April    , 2017 at 10:00 o'clock A.M.

Failure to comply with the requirements of this subpoena will render you liable to proceedings in
the district court of the United States to enforce obedience to the requirements of this subpoena,
and to punish default or disobedience.

Issued under authority of Sec. 248 of the Health Insurance
Portability & Accountability Act of 1996, Public Law No. 104-91
(18 U.S.C. § 3486)



*IN TESTIMONY WHEREOF*

*Jacob T. Elberg, Chief of Health Care &*
*Government Fraud Unit, U.S. Attorney's Office,*
*District of NJ, the undersigned official of the U.S.*
*DEPARTMENT OF JUSTICE, has hereunto set*
*his hand this 15th day of March, 2017.*

_____
(SIGNATURE)

**RETURN OF SERVICE**

*I, being a person over 18 years of age, hereby certify that a copy of this subpoena was duly served on the person named herein by means of-*

Personal delivery to an individual, to wit:

_____
(Name)

_____
(Title)

_____
(Address)

Personal delivery to an address, to wit:

_____
(Description of premises)

_____
(Address)

Registered or certified mailing to:

_____
(Name)

_____
(Address)

( )a.m.

A t_____ ( ) p.m. on _____

_____
(Signature)

_____
(Title)

**UNITED STATES OF AMERICA**
**DEPARTMENT OF JUSTICE**

**SUBPOENA DUCES TECUM**

*Upon contumacy or refusal to obey, this subpoena shall be enforceable or order of the appropriate United States District Court.*

## **Documents to be Produced**

1. All agreements with ProStrakan, Inc., Kyowa Kirin, and/or Galena BioPharma.

# UNITED STATES OF AMERICA

## DEPARTMENT OF JUSTICE

### 2016R00137/7

## SUBPOENA DUCES TECUM

**To:** **SimfaRose Pharmaceutical Specialities**
**10016 Pines Boulevard**
**Pembroke Pines, FL 33024**

*YOU ARE HEREBY COMMANDED TO APPEAR BEFORE* ___Jacob T. Elberg___,
*an official of the U.S. Department of Justice, and you are hereby, required to bring with you and produce the following:*

### *Please see Attachment.*

*which are necessary in the performance of the responsibility of the U.S. Department of Justice to investigate Federal health care offenses as defined in 18 U.S.C. §24 (a).*

*Please contact Assistant United States Attorney Jacob T. Elberg at (973) 645-3987 if you have any questions regarding this Subpoena Duces Tecum.*

**PLACE AND TIME FOR APPEARANCE:**
At ___U.S. Attorney's Office, 970 Broad Street, Suite 700, Newark, New Jersey, 07102___ on
the ___9th___ day of ___October___, 2017 at 10:00 o'clock A.M.

Failure to comply with the requirements of this subpoena will render you liable to proceedings in the district court of the United States to enforce obedience to the requirements of this subpoena, and to punish default or disobedience.

Issued under authority of Sec. 248 of the Health Insurance
Portability & Accountability Act of 1996, Public Law No. 104-91
(18 U.S.C. § 3486)



*IN TESTIMONY WHEREOF*

*Jacob T. Elberg, Chief of Health Care & Government Fraud Unit, U.S. Attorney's Office, District of NJ, the undersigned official of the U.S. DEPARTMENT OF JUSTICE, has hereunto set his hand this 7th day of September, 2017.*

_____
(SIGNATURE)

**RETURN OF SERVICE**

*I, being a person over 18 years of age, hereby certify that a copy of this subpoena was duly served on the person named herein by means of-*

Personal delivery to an individual, to wit:

_____
(Name)

_____
(Title)

_____
(Address)

Personal delivery to an address, to wit:

_____
(Description of premises)

_____
(Address)

Registered or certified mailing to:

_____
(Name)

_____
(Address)

( )a.m.
A t____ ( ) p.m. on _____

_____
(Signature)

_____
(Title)

**UNITED STATES OF AMERICA**
**DEPARTMENT OF JUSTICE**

**SUBPOENA DUCES TECUM**

*Upon contumacy or refusal to obey, this subpoena shall be enforceable or order of the appropriate United States District Court.*

## **Documents to be Produced**

1. All documents sufficient to demonstrate the following: (1) the applicable copay for each Sancuso patch dispensed was paid by the patient; (2) how much the patient and patient's insurance were billed for each Sancuso patch dispensed, including documents sufficient to identify any reduction in the amount owed or copay assistance provided to patient; and (3) how much the patient paid for each Sancuso patch he or she received.   This request includes, but is not limited to, all patient billing records, receipts or other documentation provided to the patient as proof of payment, copies of cancelled checks, and evidence of payments received from credit card companies.

2. All documents substantiating waivers of copayments and/or deductibles for Sancuso prescriptions, including, but not limited to, documents relating to any signed waivers, certifications of financial hardship, coupons, vouchers, and/or rebates.

3. All documents provided by patients concerning the patient's claimed inability to pay copayments or deductibles for any medications dispensed by SimfaRose, including, but not limited to, certifications signed by patients regarding patient's claimed financial hardship and the underlying documents demonstrating the patient's financial hardship.

4. For each patient who received automatic refills of Sancuso, produce records documenting and/or evidencing each patient's authorization of, or consent to, automatic refills of Sancuso prescriptions.

5. All documents memorializing any standing order for medications, including Sancuso, issued by doctors or members of their medical staff, including documents sufficient to identify the specific criteria for each standing order.

6. All agreements between Simfarose and any doctor or doctor's office relating to Sancuso.

7. Documents sufficient to identify all instances in which a patient or doctor's office returned, rejected, refused or cancelled a Sancuso order or delivery, and all documents evidencing refunds or credits issued by SimfaRose to the patient or the patient's insurance in connection with any returned Sancuso patches.

8. All letters prepared and submitted by SimfaRose to insurance carriers concerning justifications or explanations for Sancuso prescriptions, including, but not limited to, letters of medical necessity and/or exception requests prepared by SimfaRose, and the underlying documentation supporting any such letter or request.

9. Documents sufficient to demonstrate how much SimfaRose paid ProStrakan, Inc. and Kyowa Kirwin for the Sancuso patches, including documents sufficient to identify: (a) how much ProStrakan, Inc. charged SimfaRose for the Sancuso patches, including documents sufficient to identify any discount SimfaRose received on the Sancuso

medication, and (b) any reimbursement or compensation SimfaRose received from ProStrakan, Inc. and/or Kyowa Kirin relating to SimfaRose's distribution of Sancuso, including all documents relating to any coupon, rebate or voucher program.

10. A list of all current and former employees and independent contractors who worked for or were retained by SimfaRose, including each employees' and contractors' name, position held, dates of employment, name of employer or agency, and last known address and telephone number. Responsive documents should include without limitation, any contracts between the agency and SimfaRose.

**ATTACHMENT A**

**DEFINITIONS**

1.    The term "Document" shall be interpreted in the broad and liberal sense, including but
not limited to all items identified in Rule 34(a)(1) of the Federal Rules of Civil
Procedure, and necessarily means, without limitation: written, typed, printed, recorded,
computer stored or generated, graphic or photographic matter or any other medium upon
which intelligence or information can be recorded, stored, or retrieved, however produced
or reproduced, of any kind and description, and whether an original, master, duplicate or
copy, including, but not limited to, paper, notes, accounts, books, journals,
advertisements, catalogs, manuals, publications, correspondence, cablegrams, mailgrams,
telegrams, memoranda, letters, communications, including interoffice and intra-office
communications, reports, studies, analyses, pamphlets, calculations, projections,
contracts, charts, graphs, plans, specifications, drawings, sketches, surveys, agreements,
working papers, corporate records, minutes of board of directors or committee meetings,
books of account, ledger books, notebooks, vouchers, bank checks, cashier's checks,
receipts for cashier's checks, canceled checks, check stubs, billing records, bills, receipts,
invoices, delivery tickets, bills of lading, time sheets, desk calendars, appointment books,
log books, diaries, diary entries, photographs, microfilm, microfiche, computer programs,
electronic mail ("e-mail"), computer printouts, computer databases, information stored on
computer, computer disks or other magnetic disks or tape and notes, minutes,
transcriptions or sound recordings of any conversations, negotiations, meetings or
conferences, conducted either in person or by telephone, or things similar to any of the
foregoing, and all other papers, writings or physical things containing information,
including data compilations from which information can be obtained by detection
devices, and including preliminary drafts of or marginal notes appearing on any
Document, however denominated or described.

2.    The term "Documents sufficient to identify" or "Documents sufficient to show" means
Documents that are necessary and sufficient to provide the information requested.  You
may submit either responsive Documents or an affidavit executed by an officer of Your
company that contains the requested information, identifies the specific sources of the
information, and indicates that the statement is based on information contained in a
Document or Documents that are maintained in the regular course of business.

3.    The term "correspondence" means transmittal of information (in the form of facts, ideas,
inquiries or otherwise) between two or more persons.

4.    The term "communication" means any transmission or exchange of information between
two or more persons, orally or in writing, and includes, without limitation, any
conversation or discussion, whether face-to face or by means of telephone, facsimile,
letter, notes of conversations, memorandum, text message, instant message, tweets,
electronic posts, or electronic mail message of whatever type and description in your
possession, custody, or control, however made, and includes all handwritten, typed,
printed, recorded, transcribed, and taped writing or record of such communications.

5.   The terms "relate to" or "relating to" mean to make a statement about, refer to, discuss, describe, reflect, identify, deal with, or in any way pertain, in whole or in part, to the subject. These terms include, without limitation, the synonyms pertaining, concerning, supporting, refuting, reflecting, describing, containing or connecting in any other manner to the matter described.

6.   The term "Sancuso" means granisetron transdermal patch.

7.   "SimfaRose" means the business known as SimfaRose Pharmaceutical Specialties, irrespective of other names under which it has done business, and including, but not limited to, all of its predecessors; successors; subsidiaries; affiliates; branches; units; divisions; departments; groups; regions; offices; locations; and operations; as well as each of its present or former officers; directors; employees; agents; contractors; associates; personnel; and representatives.

8.   "Prostrakan" means the business known as Prostrakan, Inc., irrespective of other names under which it has done business, and including, but not limited to, all of its predecessors; successors; subsidiaries; affiliates; branches; units; divisions; departments; groups; regions; offices; locations; and operations; as well as each of its present or former officers; directors; employees; agents; contractors; associates; personnel; and representatives.

9.   "Kyowa Kirwin" means the business known as Kyowa Kirwin, irrespective of other names under which it has done business, and including, but not limited to, all of its predecessors; successors; subsidiaries; affiliates; branches; units; divisions; departments; groups; regions; offices; locations; and operations; as well as each of its present or former officers; directors; employees; agents; contractors; associates; personnel; and representatives.

10.  Unless otherwise stated in any specific item below, the Relevant Time Period for each of the items is January 1, 2012, through the present.

## INSTRUCTIONS

1.   Except as otherwise provided in these instructions (including, but not limited to the limitation contained in Instruction 11.20 with respect to privileges), this request requires the production of all Documents responsive to one or more of the specifications set out below which are in the possession, custody, or control of SimfaRose, or any entity associated therewith, regardless of where located.

2.   Unless otherwise stated in a specific Document request, produce all responsive Documents dated, created, revised, referring to, used, or relied on during, or relevant to, the Relevant Time Period.

3.    Every Document requested in this Subpoena must be produced in the manner in which it is or has been maintained in the ordinary course of business.

4.    To the extent that Documents responsive to this subpoena once were, but no longer are, in the possession, custody or control of SimfaRose, this subpoena requires production of all existing indices, lists or Documents in SimfaRose's possession, custody, or control that reflect the transfer or destruction of, or references to, such Documents.

5.    If no Documents exist that are responsive to a specific Document request, a written statement to that effect shall be provided at the time of production.

6.    To the extent that Documents responsive to this subpoena are in the possession, custody, or control of third parties, this subpoena requires a written statement to that effect at the time of production, specifically providing the name, address, telephone number and principal contact of the third party, and shall further identify those Documents in said third party's possession.

7.    The singular form of a noun or pronoun shall be considered to include within its meaning the plural form as well and vice versa.

8.    All present tenses of verbs or verb forms shall be considered to include within their meaning the future and past tenses as well and vice versa.

9.    All Documents produced in response to this subpoena shall comply with the following instructions:

   a.    SimfaRose shall conduct a search for responsive Documents in a manner sufficient to identify the source and location where each responsive Document is found.

   b.    All Documents produced in response to this subpoena shall be segregated and labeled to show the Document request to which the Documents are responsive and the source and location where the Document was found.

   c.    To the extent that Documents are found in file folders, computer disks, hard drives, or other storage media that have labels or other identifying information, the Documents shall be produced with such file folder and label information intact.

   d.    To the extent that Documents are found attached to other Documents, by means of paper clips, staples, or other means of attachment, such Documents shall be produced together in their condition when found.

10.   Provide a list of any non-standard abbreviations used in any of the Documents or responses being provided.

11.     Technical Specifications and Guidelines for Production of Electronically Stored Information (ESI) and Digitized ("Scanned") Images:

11.1.   Specification Modifications:  Any modifications or deviations from the Production Specifications may be done only with the express permission of the Department of Justice (the "Department").

11.2.   Production Format of ESI and Imaged Hard Copy:  Responsive ESI and imaged hard copy shall be produced in the format outlined below.  All ESI, except as outlined below in sections 11.9 – 11.17, shall be rendered to type TIFF image format, and accompanied by a Concordance® Image Cross Reference file. All applicable metadata (see section 11.3 below) shall be extracted and provided in Concordance® load file format.

11.2.a. Image File Format: All images, paper Documents scanned to images, or rendered ESI, shall be produced as 300 dpi single-page TIFF files, CCITT Group IV (2D Compression).  Documents should be uniquely and sequentially Bates numbered with an endorsement burned into each image.
-   All TIFF file names shall include the unique Bates number burned into the image.
-   Each Bates number shall be a standard length, include leading zeros in the number, and be unique for each produced page.
-   All TIFF image files shall be stored with the ".tif" extension.
-   Images should be able to be OCR'd using standard COTS products, such as LexisNexis LAW PreDiscovery™.
-   All pages of a Document or all pages of a collection of Documents that comprise a folder or other logical grouping, including a box, should be delivered on a single piece of media.
-   No image folder shall contain more than 1000 images.

11.2.b. Concordance® Image Cross Reference file: Images should be accompanied by a Concordance® Image Cross Reference file that associates each Bates number with its corresponding single-page TIFF image file.  The Cross Reference file should also contain the image file path for each Bates numbered page.
·   Image Cross Reference Sample Format:

ABC00000001,OLS,D:\DatabaseName\Images\001\ ABC00000001.TIF,Y,,,
ABC00000002,OLS,D:\DatabaseName\Images\001\ ABC00000002.TIF,,,,
ABC00000003,OLS,D:\DatabaseName\Images\001\ ABC00000003.TIF,,,,
ABC00000004,OLS,D:\DatabaseName\Images\001\ ABC00000004.TIF,Y,,,

11.2.c. Concordance® Load File: Images should also be accompanied by a "text load file" containing delimited text that will populate fields in a searchable, flat database environment.  The file should contain the required fields listed below in section 3.

·   ASCII text delimited load files are defined using the following delimiters:

*Field Separator* ^ or Code 094
*Text Qualifier* | or Code 124
*Substitute Carriage Return or New Line ()* or Code 013

- The extracted/OCR text should always be the final delimited field in the text load file.
- The text file should also contain hyperlinks to applicable native files, such as Microsoft Excel or Word files.
- There should be one line for every record in a collection.
- The load file must contain a field map/key listing the metadata fields in the order they appear within the data file.  For example, if the data file consists of a First Page of a Record (Beginning Bates), Last Page of a Record (End Bates), Document Range (a.k.a. Family Range), Document Date, File Name, and a Title, then the structure may appear as follows:

  |BEGBATES|^|ENDBATES|^|FAMILYRNG|^|DOCDATE|^|FILENAME|^|TITLE|

- Example of a minimal text load file:

  |BEGBATES|^|ENDBATES|^|OCR|
  |ABC00000001|^|ABC000000003|^|OCR TEXT|
  |ABC00000004|^|ABC000000022|^|OCR TEXT|
  |ABC00000023|^|ABC000000150|^|OCR TEXT|
  |ABC00000151|^|ABC000000200|^|OCR TEXT|

11.3.    Required Metadata/Database Fields

- An "X" denotes that the indicated field should be present in the load file produced.
- "Other ESI" includes non-email or hard copy Documents, including but not limited to data discussed in sections 11.6-11.8, and 11.11-11.15 below.

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-Mail | Other ESI |
|---|---|---|---|---|---|---|
| COMPANY | Company/Organization submitting data | Full Text | Unlimited | X | X | X |
| BOX# | Submission/volume/box number | Note Text | 10 | X | X | X |
| CUSTODIAN | Custodian(s)/Source(s) - format: Last, First or ABC Dept | Multi-Entry | Unlimited | X | X | X |
| AUTHOR | Creator of the Document | Note Text | 160 | | | X |
| BEGDOC# | Start Bates (including prefix) - No spaces | Note Text | 60 | X | X | X |
| ENDDOC# | End Bates (including prefix) - No spaces | Note Text | 60 | X | X | X |

| DOCID | Unique Document bates # or populate with the same value as Start Bates (DOCID = BEGDOC#) | Note Text | 60 | X | X | X |
|---|---|---|---|---|---|---|
| PGCOUNT | Page Count | Integer | 10 | X | X | X |
| PARENTID | Parent's DOCID or Parent's Start Bates (for EVERY Document including all Child Documents) | Note Text | 60 | X | X | X |
| ATTACHIDs | Child Document list; Child DOCID or Child Start Bates | Multi-Entry | 60 | X | X | X |
| ATTACHLIST | List of Attachment bates numbers | Multi Entry | Unlimited | | X | X |
| BEGATTACH | Start Bates number of first attachment | Note Text | 60 | X | X | X |
| ENDATTACH | End Bates number of last attachment | Note Text | 60 | X | X | X |
| PROPERTIES | Privilege notations, Redacted, Document Withheld Based On Privilege | Multi-Entry | Unlimited | X | X | X |
| RECORD TYPE | File, E-mail, Attachment, or Hardcopy | Note Text | 60 | X | X | X |
| FROM | Author - format: Last name, First name | Note Text | 160 | | X | X |
| TO | Recipient- format: Last name, First name | Multi-Entry | Unlimited | | X | X |
| CC | Carbon Copy Recipients - format: Last name, First name | Multi-Entry | Unlimited | | X | X |
| **Field name** | **Field Description** | **Field Type** | **Field Value** | **Hard Copy** | **E Mail** | **Other ESI** |
| BCC | Blind Carbon Copy Recipients - format: Last name, First name | Multi-Entry | Unlimited | | X | X |
| SUBJECT | Subject/Document Title | Note Text | Unlimited | | X | X |
| DOCDATE | Document Date/Date Sent - Format MM/DD/YYYYY | Date Keyed | MM/DD/YYYY | | | X |
| BODY | E-mail body, Other Electronic Document Extracted text, or OCR | Full Text | Unlimited | X | X | X |
| TIMESENT | Time e-mail was sent | Time | 10 | | X | |
| DATECRTD | Date Created | Date | MM/DD/YYYY | | X | X |

| Field name | Field Description | Field Type | Field Value | Hard Copy | E Mail | Other ESI |
|---|---|---|---|---|---|---|
| DATESVD | Date Saved | Date | MM/DD/YYYY | | X | X |
| DATEMOD | Date Last Modified | Date Keyed | MM/DD/YYYY | | X | X |
| DATERCVD | Date Accessed/Received | Date | MM/DD/YYYY | X | X | X |
| FILESIZE | File Size | Note Text | 10 | | | X |
| FILENAME | File name - name of file as it appeared in its original location | Full Text | Unlimited | | | X |
| APPLICATION | Application used to create native file (e.g. Excel, Outlook, Word) | Note Text | 160 | | X | X |
| FILEPATH | Data's original source full folder path | Full Text | Unlimited | | X | X |
| NATIVELINK | Current file path location to the native file | Full Text | Unlimited | | X | X |
| FOLDERID | E-mail folder path (e.g. Inbox\Active) or Hard Copy container information (e.g. Folder or binder name) | Full Text | Unlimited | X | X | |
| PARAGRAPH | Subpoena/request paragraph number to which the Document is responsive | Multi-Entry | Unlimited | X | X | X |
| HASH | Hash value (used for deduplication or other processing) | Note Text | Unlimited | | X | X |
| MESSAGEHEADER | Email header.  Can contain IP address | Full Text | Unlimited | | X | |
| Field name | Field Description | Field Type | Field Value | Hard Copy | E Mail | Other ESI |
| ATTACHMCOUNT | Number of attachments to an email | Note Text | 10 | | X | |
| FILETYPE | Identifies the application that created the file | Note Text | 160 | | X | X |
| COMMENTS | Identifies whether the Document has comments associated with it | Note Text | 10 | | X | X |

11.4.    De-duplication, Near-Duplicate Identification, Email Conversation
         Threading and Other Culling Procedures

De-duplication of exact copies within a custodian's data may be done, but all "filepaths"
must be provided for each duplicate Document.  Any other procedure which attempts to

cull, filter, group, separate or de-duplicate, etc. (i.e., reduce the volume of material) shall not be done without the express approval of the Department. All objective coding (e.g., near dupe ID or e-mail thread ID) shall be discussed and produced to the Department as additional metadata fields.

## 11.5.    Hidden Text

All hidden text (e.g. track changes, hidden columns, mark-ups, notes) shall be expanded and rendered in the image file. For files that cannot be expanded the native files shall be produced with the image file.

## 11.6.    Embedded Files

All non-graphic embedded objects (Word Documents, Excel spreadsheets, .wav files, etc.) that are found within a file shall be extracted and produced. For purposes of production the embedded files shall be treated as attachments to the original file, with the parent/child relationship preserved.

## 11.7.    Image-Only Files

All image-only files (non-searchable .pdfs, multi-page TIFFs, Snipping Tool [and other] screenshots, etc., as well as all other images that contain text) shall be produced with associated OCR text and metadata fields identified in section 11.3 for "Other ESI."

## 11.8.    Hard Copy Records

11.8.a.  All hard copy material shall reflect accurate Document unitization including all attachments and container information (to be reflected in the ParentID, AttachID, beg attach, end attach and group ID). Unitization in this context refers to identifying and marking the boundaries of Documents within the collection, where a Document is defined as the smallest physical fastened unit within a bundle. (e.g., staples, paperclips, rubber bands, folders, or tabs in a binder.) The first Document in the collection represents the parent Document and all other Documents will represent the children.

11.8.b.  All Documents shall be produced in black and white TIFF format unless the image requires color.  An image "requires color" when color in the Document adds emphasis to information in the Document or is itself information that would not be readily apparent on the face of a black and white image. Images identified as requiring color shall be produced as color 300 dpi single-page JPEG files.

11.8.c.  All objective coding (e.g., Document date or Document author) shall be discussed and produced to the Department as additional metadata fields.

11.9.      Production of Email Repositories

Email repositories, also known as email databases (e.g., Outlook .PST, Lotus .NSF, etc.),
can contain a variety of items, including: messages, calendars, contacts, tasks etc. For
purposes of production, responsive items shall provide the "Email" metadata fields
outlined in section 11.3, including but not limited to all parent items (mail, calendar,
contacts, tasks, notes, etc.) and child files (attachments of files to email or other items)
with the parent/child relationship preserved. Email databases from operating systems
other than Microsoft Exchange shall be produced after consultation and only with the
express approval of the Department.

11.10.      Production of Items Originally Generated in E-Mail Repositories but Found
and Collected Outside of Email Repositories, i.e., "Stand-alone" Items

If parent email or other parent items (e.g., calendar, contacts, tasks, notes, etc.) are found
and collected outside of email repositories (e.g., items having extensions like .MSG,
.HTM, MHT, etc.), then all such produced items shall provide the "Email" metadata
fields outlined in section 11.3, including but not limited to any attachments, maintaining
the family (parent/child) relationship.

11.11.      Production of Instant Messenger (IM), Voicemail Data, etc.

The responding party shall identify, collect, and produce any and all data which is
responsive to the requests which may be stored in cell phone/PDA/Blackberry/smart
phone data, voicemail messaging data, instant messaging, text messaging, conference call
data and related/similar technologies. However, such data, logs, metadata or other files
related thereto, as well as other less common but similar data types, shall be produced
after consultation and only with the express approval of the Department.

11.12.      Productions of Structured Data

Prior to any production of responsive data from a structured database (e.g., Oracle, SQL,
MySQL, QuickBooks, etc.), the producing party shall provide the database dictionary and
a list of all reports that can be generated from the structured database.  The list of reports
shall be provided in native Excel (.xls) format.

11.13.      Productions of Structured Data from Proprietary Applications

Prior to any production of structured data from proprietary applications (e.g., proprietary
timekeeping, accounting, etc.) the producing party shall provide the database dictionary
and a list of all reports that can be generated from the structured database.  The list of
reports shall be produced in native Excel (.xls) format.

11.14.     Production of Photographs with Native File or Digitized ESI

Photographs shall be produced as single-page .JPG files with a resolution equivalent to the original image as it was captured/created.  All .JPG files shall have extracted metadata fields provided in a Concordance® load file format as defined in the field specifications for "Other ESI" as outlined in section 11.3.

11.15.     Images from which Text Cannot be OCR Converted

An exception report shall be provided when limitations of paper digitization software/hardware or attribute conversion do not allow for OCR text conversion of certain images.  The report shall include the electronic bates, Document id or Bates number(s) corresponding to each such image.

11.16.     Production of Native Files (When Applicable Pursuant to These
           Specifications)

All native file productions shall have extracted metadata fields provided in a Concordance® load file format as defined in the field specifications for "Other ESI" as outlined in section 11.3.

   11.16.a.  Common files to be produced in Native Format.  All spreadsheet and presentation files shall be produced in the unprocessed "as kept in the ordinary course of business" state (i.e., in native format).  The file produced should maintain the integrity of all source, custodian, application, embedded and related file system metadata. No alteration shall be made to file names or extensions for responsive native electronic files.

   11.16.b.  Uncommon Files to be produced in Native Format.  ESI shall be produced in a manner which is functionally useable.  The following are examples:

         §   AutoCAD data, e.g., .DWG, .DXF, shall be processed/converted and
             produced as single-page .JPG image files and accompanied by a
             Concordance ® Image formatted load as described above. The native files
             shall be placed in a separate folder on the production media and linked by
             a hyperlink within the text load file.

         §   GIS data shall be produced in its native format and be accompanied by a
             viewer such that the mapping or other data can be reviewed in a manner
             that does not detract from its ability to be reasonably understood.

         §   Audio and video recordings shall be produced in native format and be
             accompanied by a viewer if such recordings do not play in a generic
             application (e.g., Windows Media Player).

11.16.c.  Electronic Bates (DocID) Convention
Electronic Bates (DocID) shall not exceed 30 characters in length and shall include leading zeros in the numeric portion; the Electronic Bates (DocId) shall be a unique name/number common to each Document. If the Department agrees to a rolling production, the naming/numbering convention shall remain consistent throughout the entire production. There shall be no spaces between the prefix and numeric value. If suffixes are required, please use "dot notation".  Below is a sample of dot notation:

| | |
|---|---|
| PREFIX0000001 | PREFIX0000003 |
| PREFIX0000001.001 | PREFIX0000003.001 |
| PREFIX0000001.002 | PREFIX0000003.002 |

11.17.     Format of ESI from Non-PC or Windows-based Systems

The format of ESI from non-PC or Windows-based Systems (e.g., Apple, IBM mainframes and UNIX machines) shall be the subject of discussion and shall only be produced with the express approval of the Department.

11.18.     Media Formats for Storage and Delivery of Production Data

Electronic Documents and data shall be delivered on any of the following media:

11.18.a.   CD-ROMs and/or DVD-R (+/-) formatted to ISO/IEC 13346 and Universal Disk Format 1.02 specifications.

11.18.b. External hard drives, USB 2.0 (or better) or eSATA, formatted to NTFS format specifications.

11.18.c. Storage media used to deliver ESI shall be appropriate to the size of the data in the production.

11.18.d. Media should be labeled with the case name, production date, bates range, and producing party.

Production data shall be free of computer viruses.  Any files found to include a virus shall be quarantined by the producing party and noted in a log to be provided to the Department.  Password protected or encrypted files or media shall be provided with corresponding passwords and specific decryption instructions.  No encryption software shall be used without the approval of the Department.

11.20.    Privilege Logs

Productions that include claims of privilege or confidentiality, (resulting in Documents, or portions of Documents, being withheld), shall be accompanied by a Privilege Log that identifies the Document(s) by Bates range and the basis for each claim or privilege.  The Privilege Log shall be electronically produced in native Excel (.xls) or Access (.mdb) and for any Document withheld on the ground of any claimed privilege shall include:

a.    The name and title of the author (and if different, the preparer and signatory);
b.    The name(s) and title(s) of the individual(s) to whom the Document was addressed;
c.    The name(s) and title(s) of the individuals to whom the Document or a copy of the Document was sent or to whom the Document or a copy, or any part thereof, was shown;
d.    The date of the Document;
e.    The number of pages;
f.    A brief description of the subject matter;
g.    A statement of the specific basis on which privilege is claimed; and
h.    The paragraph or subparagraph of the Document Request to which it is responsive.

11.21.    Compliance and Adherence to Generally Accepted Technical Standards

Production shall be in conformance with standards and practices established by the National Institute of Standards and Technology ("NIST" at www.nist.gov), U.S. National Archives & Records Administration ("NARA" at www.archives.gov), American Records Management Association ("ARMA International" at www.arma.org), American National Standards Institute ("ANSI" at www.ansi.org), International Organization for Standardization ("ISO" at www.iso.org), and/or other U.S. Government or professional organizations.

11.22.    Transmittal Letter to Accompany Deliverables

All deliverables shall be accompanied by a transmittal letter including all of the following information at a minimum: production date, case name and number, request paragraph responding to, identity of producing party, production volume name, electronic Bates number (Document id or control numbering), and Bates number ranges referenced, custodian names, and total number of records.

11.23.    Read Me Text File

All deliverables shall include a read me text file at the root directory containing:  total number of records, total number of images/pages or files, mapping of fields to plainly identify field names, types, lengths and formats.  The file shall also indicate the field name to which images will be linked for viewing, date and time format, and confirmation that the number of files in load files matches the number of files produced.

11.24.      Exception Log

An Exception Log shall be included Documenting any production anomalies utilizing by the electronic Bates number (Document id or control numbering) assigned during the collection, processing and production phases.

11.25.      Production of Medical Records

Where medical records of a patient are being provided, these will be produced both (1) as described above as Single-Page TIFs; and (2) on separate media (CD, DVD, or an HDD external device), as single PDFs for each patient, with an index identifying the patient's identifying information per PDF.

> 11.25.a   Whether for the TIF or PDF production, the medical records Documentation will be organized by related category of information, and within each category the information will be provided in date order
>
> 11.25.b.   Documentation that is two-sided in original form in any medical records must be taken into account and produced accordingly.
>
> 11.25.c.   To the extent possible, patients' medical records will be produced in an order such that records from the same Medicare Provider Numbers are produced sequentially.

12.      If you have any questions, contact Assistant United States Attorney Jacob T.  Elberg at (973) 645-3937.