# EXHIBIT H

April 13, 2021

John A. Tartaglia, III
The Law Offices of John A. Tartaglia, III
1 LandMark Square #426
Port Chester, New York 10573
Sent via e-mail to: jtartaglia@jatlawoffice.com

Re: CID number 2021-SP-DMR/INT-01:

Dear Mr. Tartaglia:

Thank you for speaking with Agent John Mejia and me on March 30, 2021, about our Civil Investigative Demand to Simfa Rose Pharmaceutical Specialty, Inc., et al. (SimfaRose). I am responding to your letter on the same subject, dated March 31, 2021, and also memorializing aspects of our conversation that were not included in your summary within the letter.

In the first substantive paragraph of your letter, I already noticed several inaccuracies. Your letter stated:

available to your office. You informed us that the list of thirty three (33) patients in Table A of the CID was generated automatically based upon a review of this information. You also informed us that you did not draft this list and you stated that you did not know that ▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ I will note, however, that you immediately raised her

If you look back at Table A, you will see it only lists 30 patients, not 33. Additionally, I never said what you wrote in the highlighted portion above. What I said was that ▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓ In this type of investigation, it is normal practice to look closely ▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ I also never said that the list of 30 patients in Table A was generated automatically; that was not the case. Nor did I say that I did not draft Table A; nor did I say that I didn't know ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
Our office put together the list of patients in Table A based on the evidence we had available and based on criteria we typically use in these types of investigations, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Based on ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

1

Also in the first substantive paragraph of your letter, you noted the following:




I will note, however, that you immediately raised her alleged conflict of interest in your very first communication with her regarding the CID. You

I did indeed raise the conflict of interest right away, as I was advised to do. 

I have complied with Department of Justice guidance as well as my own professional responsibility obligations, to include notifying Ms. Wolfson right away that we had identified a potential conflict.

The next statement is partially accurate and partially inaccurate. Your letter said:

for approximately two (2) years, or since around 2019.



During the call I indeed stated that

However, I did not say that

I said that we would have a medical expert evaluate.

With regard to the potential conflict of interest, your letter also said:



This paragraph conflates two separate issues. One is the potential conflict of interest, which we must resolve as soon as possible to determine how we may proceed with the investigation. I informed you on the call that we would be sending more detail about the conflict of interest in a separate letter, which we have done. An entirely separate issue is the question of re-prioritizing document requests to accommodate your client, so that your client is not unduly burdened. I told you on the phone that we could address the burden on your client by creating a subset of documents that would be prioritized as part of a rolling production. After the first part of the rolling production, we would evaluate whether to proceed with the second-priority documents or not, depending on what we learn from the first-priority documents. I stated on our call that I

would not be able to *limit the scope* of the CID ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, but that we could re-prioritize.

Your letter also said:

> were not dispensed to the patients. ==You also stated that SimfaRose submitted claims for prescriptions for patients that live very far from the pharmacy such as Indiana for example[1] and that you therefore want to determine whether the prescriptions are legitimate to ensure that SimfaRose is acting appropriately.==
>
> [1] In offering Indiana as an example, you were presumably referring to ▮▮▮▮▮▮▮, a patient in Indiana who is listed as patient number three (3) on Table A.

Yes, I said some SimfaRose patients live far from the pharmacy. I did not give Indiana as an example, nor did I refer to patient ▮▮▮▮▮▮.

Your letter also has another section that discusses specific patients who lived out-of-state but received prescriptions from SimfaRose; for example, the drug Sancuso:

> As I mentioned during our conference call, SimfaRose is a specialty pharmacy that is accredited by the Commission for Health Care and accredited as a compounding pharmacy by the Pharmacy Compounding Accredited Board that specializes in providing oncology drugs and cancer treatment, including sterile compounds and infusions. Because of their vast experience and significant knowledge and skill, and the high level of service it provides, many oncology doctors and other medical providers in Florida rely on SimfaRose to provide their patients with all of the drugs they need. Coventry/Aetna sought SimfaRose's assistance in developing and administering a program for eligible cancer patients ▮▮▮▮▮▮▮▮, patient number 18 on Table A) to receive chemotherapy treatment in the comfort of their own homes, which, among many other significant benefits, reduced healthcare costs for Coventry/Aetna's patients by $150,000.00 on average per patient. SimfaRose has entered into prior authorization services agreements with drug manufacturers under which it assists in obtaining prior authorizations for certain drugs and fills certain prescriptions for these drugs for patients in designated areas of the country beyond just Florida such as the entire Southeast region. One of these agreements is for Sancuso, which is listed in request number 11 of the CID, was produced to the DOJ in response to a subpoena which sought some of the very same documents that are sought by request number 4 of your CID. Patients in Table A such as ▮▮▮▮▮ in Indiana and ▮▮▮▮▮ in Illinois received Sancuso from SimfaRose in connection with this agreement and the prior authorization program it helped establish for this drug. ▮▮▮▮▮, patient number 26 on Table A, is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ received treatment for her cancer from her doctor in Florida and filled her prescriptions at SimfaRose.

Although I appreciate this information, I just wanted to point out that much of the information in the paragraph above was not discussed during our call, but provided after.

**Specific CID Requests:**

The section of your March 30 letter describing our discussion of "the scope of the demands in the CID," which starts on page 3, is generally a fair summary of where we left our discussion.

3

However, I make the following clarifications:

- In your letter, you use the terms "limit the scope" and "reprioritize" interchangeably. Just to be clear, I want to reiterate what I emphasized during our call— that while we can reprioritize requests and reassess where things stand once the first-priority documents are produced, we cannot, at this time, agree to limit the scope of requests by removing listed items. Where we have agreed to any limitations so far, we reserve the right to request the remaining documents later should we need to.
- We will get back to you with clarification as described in your letter regarding Document Requests 2, 3, 7, 11, and 12; and Interrogatory 7.
- Some of our conversation, I believe, touched on Document Request 4 and what types of documents we would be looking for. However, I need to make further clarification on this request. We cannot at this time agree to any broad limitation/prioritization based on subject matter of the agreement, arrangement, or relationship. Therefore, if you come across any examples that would be responsive but that you do not believe are relevant, please consult with us about the document so that we can address on a case by case basis. We may need some more detailed information before we can determine whether the document should or shouldn't be prioritized.
- We did not recall discussing Document Request 5, but it should be interpreted broadly. If you have questions about specific documents, please let us know.
- For Document Request 8, yes, we can agree to begin with documents reflecting notices of and determinations made in connection with internal or external investigations, audits, reviews, or inquiries. At this time, there is no need to inform us of the existence of the U.S. Attorney's Office for the District of New Jersey investigation, as we are already aware of it.
- Document Request 10 seeks not only external and internal communications, but also other documents relating to prescription drug coverage under federal programs, such as guidance documents.
- You told us that some document requests pose a difficulty or burden on your client. For example, you mentioned that patient records are stored or filed in such a way that it is too difficult to search for the items we requested. As I mentioned on the phone, we need to make sure that there is not a method of searching your client's records that your client is simply not aware of. Therefore, we need more information from you regarding how records are kept and what programs/software are used. Our office may be able to provide some additional guidance for performing searches.

**DEA Subpoena for** ▮▮▮▮▮▮▮▮▮▮ **records:**

As discussed, we have re-sent our previous communications specifying what was missing from SimfaRose's responses to the DEA subpoena.

Sincerely,

CLARISSA PINHEIRO SCHILD
Digitally signed by CLARISSA PINHEIRO SCHILD
Date: 2021.04.13 18:01:42 -04'00'

Clarissa Pinheiro Schild
Assistant United States Attorney

4